Lanzinger, J.
{¶ 1} In this case, we are asked to resolve a conflict between the appellate districts presented by the following certified question: “Must the state, in prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)[(b)] through (f), prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture?” [1] We answer the certified-conflict question in the affirmative and affirm the judgment of the Sixth District Court of Appeals.
I. Case Background
{¶ 2} Drug-enforcement agents arranged a reverse transaction, in which a confidential source sold two imitation bricks of cocaine to appellee, Rafael Gonzales. One of the bricks contained a compartment holding a baggie of cocaine weighing 139.2 grams, of which 3 to 20 grams were the weight of the baggie itself. The other brick contained a tracking device. Because he was alleged to have possessed more than 100 grams of cocaine, Gonzales was indicted on one first-degree-felony count of cocaine possession under R.C. 2925.11(A) and 2925.11(C)(4)(f). The allegation that Gonzales had possessed at least 100 grams of cocaine supported a major-drug-offender (“MDO”) specification in the indictment. R.C. 2941.1410(A). R.C. 2929.0KW) includes in its definition of MDO “an offender” convicted of possessing “at least one hundred grams of cocaine.”
*262 {¶ 3} On the day of trial, Gonzales, through counsel, filed a motion in limine to preclude the state’s expert and a lay witness from testifying that the substance tested was cocaine, because counsel had received the lab report from the state less than 48 hours before the trial. The trial court excluded the lab report and expert witness, but permitted lay-witness testimony to identify the substance in the brick as cocaine if a proper foundation was established.
{¶ 4} At trial, the confidential source and several law-enforcement officers testified that exhibit 13 was a baggie of cocaine. Some witnesses acknowledged that cocaine is often mixed with other substances or filler material. No evidence was presented, however, regarding the purity of exhibit 13—’that is, whether, or how much, this cocaine was mixed with filler. The defense asked the trial court to read the statutory definition of “cocaine” in R.C. 2925.01(X) to the jurors, and to instruct them that to convict Gonzales of first-degree felony possession, they were required to find that Gonzales possessed at least 100 grams of actual cocaine, rather than a cocaine mixture. The trial court denied both motions.
{¶ 5} The jury found Gonzales guilty of possession of cocaine and further found that the amount of cocaine involved equaled or exceeded 100 grams. Gonzales was immediately sentenced to a mandatory term of 11 years. See R.C. 2929.13(F)(5) and 2929.14(A)(1).
{¶ 6} Gonzales filed a notice of appeal to the Sixth District Court of Appeals. In reversing the judgment, the appellate court vacated the 11-year mandatory prison sentence that Gonzales received as an MDO pursuant to R.C. 2925.11(C)(4)(f) because the amount of cocaine was 100 grams or more. It remanded the case for resentencing. The appellate court held that in prosecuting cocaine offenses under R.C. 2925.11(C)(4), the state is required to prove that the weight of the actual cocaine possessed by the offender met the statutory threshold. 2015-Ohio-461, 2015 WL 502263, ¶ 47. Although the state submitted evidence on the weight of the baggie’s contents, it did not offer any evidence on whether that weight included ingredients other than cocaine. Id. at ¶ 46-47. As a result, the Sixth District held that the penalty enhancement under R.C. 2925.11(C)(4)(f) must be reversed and vacated. Id. at ¶ 47.
{¶ 7} The Sixth District, sua sponte, certified a conflict with the judgment of the Second District in State v. Smith, 2d Dist. Greene No. 2010-CA-36, 2011-Ohio-2568, 2011 WL 2112609. We recognized the conflict, 143 Ohio St.3d 1402, 2015-Ohio-2747, 34 N.E.3d 131, and accepted the state’s discretionary appeal, 143 Ohio St.3d 1403, 2015-Ohio-2747, 34 N.E.3d 132. The sole issue before this court is whether, in prosecutions for possession of cocaine, the offense level is determined by the weight of only the actual cocaine or whether it is determined by the total weight of the cocaine plus any filler.
*263 II. Legal Analysis

Standard of Review

{¶ 8} The interpretation of a statute is a matter of law, and thus we review the court of appeals’ decision de novo, including consideration of the statute’s ambiguity. State v. Pariag, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9. Our main objective is to determine and give effect to the legislative intent. State ex rel. Solomon v. Police & Firemen’s Disability & Pension Fund Bd. of Trustees, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995). To accomplish this task, we first must look at the language of the statute itself. Provident Bank v. Wood, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). If the language is clear and unambiguous, we must apply it as written. “[I]t is the duty of this court to give effect to the words used, not to delete words used or to insert words not used.” Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm., 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969).
{¶ 9} It is also a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result. State ex rel. Dispatch Printing Co. v. Wells, 18 Ohio St.3d 382, 384, 481 N.E.2d 632 (1985); Slater v. Cave, 3 Ohio St. 80, 83 (1853) (“where the literal construction of a statute would lead to gross absurdity, or where, out of several acts touching the same subject matter, there arise collaterally any absurd consequences, manifestly contradictory to common reason, the obvious intention of the law must prevail over a literal interpretation”). See also R.C. 1.47(C) (“In enacting a statute, it is presumed that * * * [a] just and reasonable result is intended”). Principles of statutory construction require that courts interpret statutes to reflect a consistent legislative intent.
{¶ 10} We have, however, emphasized that “ ‘where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.’ ” State v. Young, 62 Ohio St.2d 370, 374, 406 N.E.2d 499 (1980), quoting United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). This canon of strict construction, also known as the rule of lenity, is codified in R.C. 2901.04(A), which provides that sections of the Revised Code that define offenses or penalties “shall be strictly construed against the state, and liberally construed in favor of the accused.” Under the rule, ambiguity in a criminal statute is construed so as to apply the statute only to conduct that is clearly proscribed. United States v. Lanier, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

The Statute—R.C. 2925.11(C)(1)

{¶ 11} Gonzales was convicted of possession of cocaine in violation of R.C. 2925.11, which provides:
*264 (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
[[Image here]]
(C) Whoever violates division (A) of this section is guilty of one of the following:
[[Image here]]
(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
(a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
(b) If the amount of the drug involved equals or exceeds five grams but is less than ten grams of cocaine, possession of cocaine is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
(c) If the amount of the drug involved equals or exceeds ten grams but is less than twenty granis of cocaine, possession of cocaine is a felony of the third degree, and, except as otherwise provided in this division, there is a presumption for a prison term for the offense. If possession of cocaine is a felony of the third degree under this division and if the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree.
(d) If the amount of the drug involved equals or exceeds twenty grams but is less than twenty-seven grams of cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree.
(e) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.
(f) If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the *265 offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.
(Emphasis added.) The possession of any amount of cocaine is at least a felony of the fifth degree.
{¶ 12} This version of R.C. 2925.11(C)(4)(f) was enacted as part of Am.Sub.H.B. No. 86 (“H.B. 86”), effective September 30, 2011. Previous versions of R.C. 2925.11 had set forth the degrees of the cocaine-possession offense using a range of the amount of the drug possessed and differentiated cocaine from crack cocaine. See Am.Sub.S.B. No. 66,147 Ohio Laws, Part III, 6772, 6820-6821. For example, prior to H.B. 86, former R.C. 2925.11(C)(4)(f) read: “If the amount of the drug involved exceeds one thousand grams of cocaine that is not crack cocaine * * *, possession of cocaine is a felony of the first degree * * (Emphasis added.) Id. at 6821. However, H.B. 86 amended several sections of the criminal code to decrease the offense classifications, thereby reducing the penalty or punishment for some offenses. The words “that is not crack cocaine” were removed from R.C. 2925.11, while “of cocaine” remained. As we previously noted, “one of the purposes of H.B. 86 was to ‘eliminate the difference in criminal penalties for crack cocaine and powder cocaine.’ Title, H.B. 86.” State v. Limoli, 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.3d 641, ¶ 3.
{¶ 13} The state argues that the Sixth District Court of Appeals misinterpreted R.C. 2925.11(C)(4)(f) by requiring proof of the weight of the amount of actual cocaine in exhibit 13, to the exclusion of any filler material. It points out that R.C. 2925.11(C)(4) recognizes that the “drug involved” can be “cocaine or a compound, mixture, preparation, or substance containing cocaine.” Because the drug involved can be a mixture, the state reasons that the weight requirements in R.C. 2925.11(C)(4)(b) through (f) do not refer to the weight of pure cocaine only. The state contends that the appellate court improperly focused on the words “of cocaine” in R.C. 2925.11(C)(4)(f) to limit the drug involved to actual cocaine. The state would explain the inclusion of the phrase “of cocaine” as a holdover from the prior version of the statute, in which the legislature distinguished between powder cocaine and crack cocaine. It argues that the literal interpretation of the statute adopted by the Sixth District creates an absurd result and that the General Assembly did not intend to require a purity analysis of cocaine in prosecutions for possession of cocaine.
{¶ 14} The state and its amici note that Ohio’s state labs perform aggregate/qualitative analyses but not purity/quantitative analyses of drugs. They contend that it will take a significant amount of time for state labs to become accredited to do the purity testing mandated by the Sixth District’s decision and *266 that this process will hamper efforts to prosecute cocaine trafficking and possession cases. The state believes that R.C. 2925.11(C)(4)(b) through (f) authorize the aggregate weight of the substance to determine the offense level and penalty as long as there is a detectible amount of cocaine.

The Conflict Cases

{¶ 15} In this case, the Sixth District agreed with the state that the plain language of R.C. 2925.11(C)(4) allows a jury to consider the total weight of the substance in the baggie containing cocaine. 2015-0hio-461, 2015 WL 502263, at ¶ 41. However, to be convicted of the MDO specification, the offender must possess an amount that equals or exceeds “at least one hundred grams of cocaine.” (Emphasis added.) R.C. 2929.01(W) and 2925.11(C)(4)(f); see also R.C. 2925.01(X) (defining “cocaine”). The appellate court compared this language to the provisions for marihuana and heroin in R.C. 2925.11 and found that those subsections did not modify “drug involved” with “of marihuana” or “of heroin.” Id. at ¶42. See also R.C. 2925.11(C)(3)(b) and (6)(b). It also noted that the definition of “cocaine” in R.C. 2925.01(X) and 3719.41 differs from that of many other drugs, in that most other drugs are defined broadly to include a mixture of the drug within that particular drug’s definition. 2015-Ohio-461, 2015 WL 502263, at ¶ 43. For example, “marihuana” is defined as “all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin.” R.C. 2925.01(AA) and 3719.01(0). In contrast, R.C. 2925.01(X) provides:
“Cocaine” means any of the following:
(1) A cocaine salt, isomer, or derivative, a salt of a cocaine isomer or derivative, or the base form of cocaine;
(2) Coca leaves or a salt, compound, derivative, or preparation of coca leaves, including ecgonine, a salt, isomer, or derivative of ecgonine, or a salt of an isomer or derivative of ecgonine;
(3) A salt, compound, derivative, or preparation of a substance identified in division (X)(l) or (2) of this section that is chemically equivalent to or identical with any of those substances, except that the substances shall not. include decocainized coca leaves or extraction of coca leaves if the extractions do not contain cocaine or ecgonine.
Because the definition of “cocaine” does not include a “mixture,” the Sixth District concluded that “a defendant may be held liable for cocaine offenses under *267 R.C. 2925.11 for only that portion of the disputed substance that is chemically identified as cocaine.” 2015-Ohio-461, 2015 WL 502263, at ¶ 45.
{¶ 16} The Second District in Smith, 2011-Ohio-2568, 2011 WL 2112609, at ¶ 12, rejected the defendant’s argument that the weight of “the drug involved” should not include parts of the substance other than the actual cocaine. Smith’s argument centered on the definition of “drug” incorporated from R.C. 4729.01(E)(3) in R.C. 2925.01(C), which includes “[a]ny article, other than food, intended to affect the structure or any function of the body of humans or animals.” (Emphasis added.) Because cocaine may be mixed with food like baking soda, sugar, or corn starch, Smith had argued that the state was required to prove the weight of the cocaine that he had sold apart from any food. 2011-Ohio-2568, 2011 WL 2112609, at ¶ 11. The Second District disagreed, stating that the drug involved was an off-white chunky substance containing cocaine and was not typical food or drink. Id. at ¶ 12. It also relied on some pre-H.B. 86 cases to conclude that the state was not required to segregate the cocaine from the other ingredients in the substance to prove the weight of the drug. Id.
{¶ 17} The state fails to point to any ambiguity in the statute. Without that, we must simply apply the statute as it is written, without delving into legislative intent. Although the state argues that the Sixth District’s interpretation would lead to absurd or unjust results and that cocaine should not be treated differently from any other controlled substance, we cannot agree. Subsections (C)(4)(b) through (f) are written differently from the other subsections of R.C. 2925.11: the term “drug involved” is modified by the words “of cocaine.” The state is quick to call this a faux pas on the part of the General Assembly when it amended R.C. 2925.11(C)(4) in H.B. 86, but we are not as sure. As an amicus curiae arguing in support of Gonzales points out, while H.B. 86 eliminated the separate sentencing scheme for crack cocaine, it also significantly lowered the amount of cocaine necessary to trigger an elevation in sentence. H.B. 86, however, was designed to reduce prison sentences for nonviolent offenders, and lowering the amount of cocaine needed to elevate a prison sentence would be inconsistent with this purpose, according to the Ohio Public Defender. If the statute requires the state to prove the weight of the actual cocaine, however, and not simply the weight of a compound or mixture containing cocaine, then the legislative objectives are accomplished.
{¶ 18} The dissent contends that we are ignoring the reality that powder cocaine is a compound of several substances. The chemical makeup of cocaine is not the issue, however. The question is whether the filler material added to cocaine is considered part of the drug involved for violations of R.C. 2925.11(C)(4). For a violation of R.C. 2925.11(C)(4)(a), the amount of filler material versus the amount of cocaine is irrelevant because there is no weight *268 requirement. Possession of any amount of cocaine is a fifth-degree felony. To be guilty of a higher-degree felony, however, R.C. 2925.11(C)(4)(b) through (f) require that a person possess a certain amount “of cocaine.”
{¶ 19} The dissent also contends that a “compound” is the same thing as a “mixture,” and therefore the definition of “cocaine” encompasses cocaine mixed with filler material. But if “mixture” is the same as “compound,” the General Assembly would not have needed to put both terms into the definitions of marihuana or methamphetamine. See R.C. 2925.01(AA) and 3719.01(0); R.C. 2925.01(11). The rules of statutory construction require courts to give each word in a statute or regulation effect. E. Liverpool v. Columbiana Cty. Budget Comm., 105 Ohio St.3d 410, 2005-Ohio-2283, 827 N.E.2d 310, ¶ 8. We therefore cannot consider a “compound” to be a “mixture” of cocaine and filler material.
{¶ 20} We find nothing in the language of R.C. 2925.11(C)(4)(f) to be ambiguous. By its plain terms, the statute prohibits the possession of 100 grams or more of cocaine. In order to read the statute as the state would have us do, we would need to either delete the phrase “of cocaine” or add the phrase “or a compound, mixture, preparation or substance containing cocaine.” While we recognize that this interpretation of R.C. 2925.11(C)(4)(f) may make the prosecution of possession of cocaine offenses harder for the state because state laboratories are not equipped or certified to do a purity analysis, it does not render prosecutions impossible. In another case from the Sixth District, the state used laboratory reports from a facility in Chicago, Illinois, that specified the total weight of the substances involved and a percent of actual cocaine in those substances. See State v. Sanchez, 2016-Ohio-542, 59 N.E.3d 719, ¶ 15.
{¶ 21} The dissent alleges that this holding conflicts with our decisions in State v. Chandler, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, and Garr v. Warden, Madison Corr. Inst., 126 Ohio St.3d 334, 2010-Ohio-2449, 933 N.E.2d 1063. But both cases are easily distinguishable based on their facts. In Chandler, the substance that was sold as crack cocaine was actually baking soda. We held that imposing the penalty enhancement as a major drug offender when the substance did not contain any cocaine was contradictory to the language of R.C. 2925.03(C)(4)(g) (trafficking offenses). Because there was no cocaine involved, we were not presented with the question whether the weight of a mixed substance that included cocaine was sufficient to declare a defendant a major drug offender. Similarly, Garr involved an offer-to-sell drug-trafficking case in which no drugs were recovered during the investigation of the crime. Again, because there was no substance to be weighed, we were not asked whether the total weight of the substance or the weight of actual cocaine counted.
{¶ 22} While the state’s arguments concerning legislative intent and the consequences of the Sixth District’s interpretation are persuasive in regard to *269 what the statute should say, the arguments are insufficient to overcome what the statute clearly does say. The remedy is to be found in the legislature, not in a tortured judicial interpretation of a statute unambiguous on its face. Given the unambiguous language of the statute, we answer the certified-conflict question in the affirmative and hold that in prosecuting cocaine-possession offenses under R.C. 2925.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold.
{¶ 23} The judgment of the Sixth District Court of Appeals is affirmed.
Judgment affirmed.
Pfeifer and O’Neill, JJ., concur.
Kennedy, J., concurs in judgment only, with an opinion.
O’Connor, C.J., dissents, with an opinion joined by O’Donnell and French, JJ.

. The certified-conflict question as posed by the Sixth District Court of Appeals references R.C. 2925.11(C)(4)(a) through 2925.11(C)(4)(f). Subdivision (a), however, does not have a weight requirement, so that possession of any amount of cocaine is a felony of the fifth degree. We have modified the question to include only those provisions that have a weight requirement.