[Cite as *State v. Hudson*, 2017-Ohio-615.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2014-T-0097** |
| - vs - | : | |
| ANTHONY J. HUDSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2011 CR 00073.

Judgment: Affirmed in part; reversed in part and remanded.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Timothy Young*, Ohio Public Defender, and *Katherine R. Ross-Kinzie*, Assistant Public Defender, 250 East Broad Street, Suite 1400, Columbus, OH 43215-9308. (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Anthony J. Hudson, appeals the trial court's September 23, 2014 judgment entry sentencing him following a jury trial and conviction for possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(e). Anthony argues that his conviction is contrary to law since the state failed to establish the weight of the actual cocaine in the crack cocaine in his possession. He also asserts there was insufficient

evidence establishing that he knowingly possessed cocaine and thus his conviction is against the manifest weight of the evidence. We affirm in part, reverse in part, and remand.

{¶2} William Felt Jr. testified that he was a member of the TAG task force and is an Ashtabula City Police Officer. Felt explained that he initially drove a confidential source to a home in Warren Township to purchase drugs. Thereafter, a warrant was obtained[1], and on November 13, 2006, the Trumbull, Ashtabula, and Geauga County "TAG" task force executed a search warrant at the home. The only person in the home at the time was Michael Hudson, who is appellant's brother.

{¶3} Felt was the photographer and the task force's scribe when the warrant was executed. He photographed and secured documents with the name Michael Hudson on them and other documents with Anthony Hudson's name on them.

{¶4} Felt photographed a receipt found in the kitchen with Michael's name on it with his address listed as the address of the home being searched. Felt also secured a CD case with white powder lines and residue on it. The officers also found a scale with a white residue on it, baking soda, a protein powder used for "cutting" cocaine, and a frying pan with white crusty residue, suspected to be cocaine, in the kitchen. Felt's photographs of these items were introduced at trial. They also found a baggie containing marijuana in the kitchen.

{¶5} Felt confirmed that the first floor bedroom was padlocked closed, and the officers had to use force to open it. TAG task force members located documents in the

---

1. This is the second time this case has been appealed. We initially reversed and remanded the trial court's decision to suppress the evidence secured via the search warrant because the good-faith exception to the exclusionary rule applied. *State v. Hudson*, 11th Dist. Trumbull No. 2013-T-0001, 2013-Ohio-4967, ¶25.

locked bedroom containing the name Michael Hudson as well as documents with Anthony's name on them. They found a pawn receipt with Michael's name on it in the padlocked bedroom along with a residential lease agreement listing Anthony Hudson as the lessee of this property. Felt also photographed an Ohio identification card issued to Anthony and a Warren utility receipt with Anthony's name on it in this locked bedroom.

{¶6} The task force also found a large quantity of crack cocaine on a television stand in the locked bedroom. This was the only bedroom in the home that had the door padlocked closed.

{¶7} Ten to fifteen minutes after the task force arrived at the home, Major Thomas Stewart Sr. saw Anthony drive past the home in a beige Cadillac. Stewart pulled Anthony over for driving with a suspended license. The car was registered in Michael's name. Stewart secured a small bag of marijuana from Anthony and a set of keys, which contained the key to the padlock for the locked bedroom. This was the only key the officers located to the padlocked bedroom.

{¶8} Detective Tackett was the lead detective in this case and was also a TAG task force member. Tackett testified that it has been increasingly difficult to secure drug traffickers' homes and cars via forfeiture because there is a tendency for offenders to put valuables in another's name to avoid forfeiture. Tackett explained that Anthony was known to use his brother's name as an alias.

{¶9} Appellant's brief asserts three assignments of error:

{¶10} "Anthony Hudson's first-degree felony conviction for possession of 27 grams or more but less than 100 grams of cocaine was not supported by sufficient evidence. His first-degree felony conviction therefore violates his right to due process.

3

Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution. (T.p. 92-94, 186.)

{¶11} "The trial court erred when it denied Mr. Hudson's Crim.R. 29(A) motion for acquittal because the conviction for possession of cocaine therefore violates his rights to due process. Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution. (T.p. 142-144.)

{¶12} "Anthony Hudson's conviction for possession of cocaine is against the manifest weight of the evidence, in violation of Mr. Hudson's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution. (T.p. 186.)"

{¶13} First, Anthony alleges that his first-degree felony conviction was based on insufficient evidence. He argues that the state must prove the quantity of the pure cocaine in the crack cocaine in his possession in order to secure an enhanced conviction. He alleges that the evidence at trial only supports a conviction for a fifth-degree felony possession in light of the state's failure to prove the actual quantity of pure cocaine in his possession. We agree.

{¶14} The state correctly points out that Anthony did not raise this issue at trial either by way of objection or in his motion for acquittal. Thus, we review this issue for plain error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 (2002). Notice of plain error should only occur under exceptional circumstances and in order to prevent a miscarriage of justice. *Id.* at paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial

4

would clearly have been otherwise." *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

**{¶15}** R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶16}** R.C. 2925.11(C)(4)(e) states: "Whoever violates division (A) of this section is guilty of one of the following: * * * (4) *If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine*, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows: * * * (e) If *the amount of the drug* involved equals or exceeds twenty-seven grams but is less than one hundred grams *of cocaine*, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree." (Emphasis added.)

**{¶17}** In Anthony's case, the state established via the testimony of a forensic chemist, Jennifer Acurio, that crack cocaine is a compound. She confirmed that the amount of the drug in Anthony's possession, i.e., crack cocaine, weighed more than 27 grams. Acurio confirmed that the crack cocaine weighed 28.97 grams when she first weighed it in June 2014. Acurio's predecessor weighed and tested the same substance, and it weighed a few grams more in December of 2006. She explained that crack cocaine is a moisture compound and that it lost moisture weight during the eight years that it was in storage.

**{¶18}** Acurio stated the following on cross-examination:

5

{¶19} "Q. [D]o you test other substances within that material to determine what other compounds are used to help create crack cocaine?

{¶20} "A. No, we don't.

{¶21} "* **

{¶22} "A. * * * Once cocaine is present, I don't identify anything else that is in the mixture.

{¶23} "* * *

{¶24} "Q. So you wouldn't be able to determine, would you, if there's muscle feeder in that crack cocaine?

{¶25} "A. No * * *.

{¶26} "Q. * * * could you tell if there was Baking Soda in crack cocaine?

{¶27} "A. No, I could not.

{¶28} "Q. * * * why not?

{¶29} "A. The instrumentation that we use, we don't identify other compounds that are present. And based on the law, we don't do any kind of quantification to show how much the cocaine is present.

{¶30} "Q. * * * It's all just considered cocaine?

{¶31} "A. Correct.

{¶32} "Q. So if you, if your or somebody wanted to, you could still that down further and see how much is cocaine and how much is extraneous matters?

{¶33} "A. It could be quantified.

{¶34} "* * *

**{¶35}** "Q. So we will never know how much actual cocaine is in that package; correct?

**{¶36}** "A. That's correct."

**{¶37}** Felt's testimony confirmed that he found baking soda at the home that day and explained that it is used "as a chemical additive to powder cocaine. And that is how crack is made." Felt also explained the significance of the protein additive used by weightlifters found in the home, stating "[i]t's added to raw cocaine before it's cooked into crack. And what it does is increases the volume of the original product. It's a cutting agent. You essentially turn a specific quantity of powder cocaine, add a corresponding amount of a cutting agent, now you've doubled the amount of cocaine which you then can turn more profit * * *."

**{¶38}** Anthony asserts that a plain reading of R.C. 2925.11(C)(4)(e) requires the state to establish the weight of the pure cocaine in the crack cocaine in his possession via a scientific analysis of the entire substance. He directs our attention to *State v. Gonzales*, 6th Dist. Wood No. WD-13-086, 2015-Ohio-461, ¶47, that recently held: "the state, in prosecuting cocaine offenses under R.C. 2925.11(C)(4)(a) through (f), must prove that the weight of the *actual cocaine* possessed by the defendant met the statutory threshold. * * * Because the state failed to introduce evidence as to the purity or weight of the cocaine in this case, we find that appellant's penalty enhancement under R.C. 2925.11(C)(4)(f) must be reversed and vacated." (Emphasis sic.)

**{¶39}** After certifying a conflict on this precise issue, the Supreme Court very recently affirmed the *Gonzales* decision, holding: "Given the unambiguous language of the statute, we * * * hold that in prosecuting cocaine-possession offenses under R.C.

7

29295.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold." *State v. Gonzales*, 2016-Ohio-8319, __N.E.3d ___, ¶22.

**{¶40}** Thus, because R.C. 2925.11(C)(4)(e) is unambiguous, we reverse and vacate Anthony's penalty enhancement pursuant to R.C. 2925.11(C)(4)(e), because the state failed to establish the weight "of cocaine" excluding the amount of filler materials. On remand, the trial court shall resentence him to the lowest level of the offense, a fifth-degree felony under R.C. 2925.11(C)(4)(a). *Gonzales*, supra, at ¶18 (explaining that possession of any amount of cocaine is a fifth-degree felony, and holding that in order to be guilty of a higher degree felony, the statute requires evidence that an offender possesses a certain amount "of cocaine," which does not include any additives or filler materials.)

**{¶41}** Anthony's second assignment of error challenges the trial court's denial of his motion for an acquittal under Crim.R. 29(A). An appellate court reviews a trial court's decision on a motion for acquittal under the same standard governing a challenge on insufficient evidence grounds. *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶17. We must examine the evidence and determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, superseded on other grounds.

**{¶42}** Anthony takes issue with the state's evidence that he *knowingly* possessed cocaine. He claims that the concept of knowingly requires proof that the drugs did not belong to his brother and that the state had to prove that he had exclusive access to the drugs. He also asserts that there was insufficient evidence to establish that he "constructively possessed" the drugs because constructive possession requires proof that he was not only able to exercise dominion and control over the drugs, but also that he was *conscious* of the presence of the drugs.

**{¶43}** R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶44}** R.C. 2901.22(B) states in part: "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

**{¶45}** "Possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession of drugs may be actual or constructive, and constructive possession may be established "entirely by circumstantial evidence." *State v. Fogle*, 11th Dist. Portage No. 2008-P-0009, 2009-Ohio-1005, ¶28; *State v. Swain*, 6th Dist. Erie Nos. E-11-087, E-11-088, 2013-Ohio-5900, ¶40-41.

**{¶46}** "Constructive possession exists when an individual is able to exercise dominion or control over an item, even if the individual does not have the item within his immediate physical possession." *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-

9

4148, 895 N.E.2d 633, ¶13. "However, the mere fact that [drugs are] located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was *conscious* of the presence of the object. Without this element one could be found to be in illegal possession of [drugs] surreptitiously placed in or upon his property by another." (Emphasis added.) (Citations omitted.) *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982).

**{¶47}** Further, absent an admission by a defendant or direct testimony by another with knowledge, the defendant's knowledge of the presence of illegal drugs where the crime charged is possession of drugs often must be proven via circumstantial evidence as well. *Id.* at 92. "Circumstantial evidence, however, must do more than raise a strong presumption of guilt in order to support a conviction. In order to prove an essential element of a crime the circumstantial evidence must be irreconcilable with any reasonable theory of the accused's innocence." *Id.*

**{¶48}** The determinative issue before us is whether the evidence presented at Anthony's trial is sufficient to support a finding beyond a reasonable doubt that he had knowledge that the crack cocaine was in his home's locked bedroom, and as a result he had constructive possession of cocaine. *Id.* at 93.

**{¶49}** As Anthony contends, it is undisputed that both Michael and Anthony Hudson resided in the Warren Township home. However, the state's theory in pursuing Anthony for possession of the crack cocaine was based on the fact that he had personal items in the locked bedroom that contained the drugs and that he had actual, physical possession of the key to the padlocked door. The state's evidence was circumstantial.

10

**{¶50}** The defense argued at trial that the drugs belonged to Michael in light of the fact that he owned the car and the set of keys that had the key to the padlocked bedroom door. However, there was nothing evidencing that the keys belonged to Michael.

**{¶51}** Anthony directs our attention to *State v. Swalley*, 11th Dist. Ashtabula No. 2010-A-0008, 2011-Ohio-2092, which held in part that Swalley's conviction for drug possession was not supported by sufficient evidence. However, after an exhaustive analysis of similar cases involving possession of drugs in a shared residency, *Swalley* held that the evidence before it was insufficient since the drugs were found in common areas of the dwelling that were occupied by and completely accessible to the other residents of the home. Furthermore, Swalley established that he was out of town for a week before the search and at the time of the search. Thus, we held in the absence of forensic evidence linking the drugs to the defendant, there was insufficient evidence to establish that he had possession of the drugs. *Id.* at ¶73.

**{¶52}** In *State v. Jackson*, 11th Dist. Ashtabula No. 2002-A-0039, 2003-Ohio-5863, however, we upheld Jackson's possession conviction where the drugs were found in a sock drawer in a bedroom even though there were four adults in the home at the time of the search. The search also revealed correspondence and bills addressed to Jackson in this unlocked bedroom. Jackson testified in her defense and denied that the drugs belonged to her, but she admitted to occasionally sleeping in this bedroom in her three-bedroom home. *Id.* at ¶31-32. Thus, we found that the state established via sufficient evidence that she had constructive possession of the drugs. *Id.* at ¶36-37.

11

{¶53} Like *Jackson*, there was no evidence presented that Anthony had cocaine in his physical possession. Regardless, one could reasonably deduce that Anthony had constructive possession of the cocaine locked in the bedroom in his home. Anthony rented the Warren Township residence, and as a result of his possession of the key to the room, he had access and control over the locked bedroom that contained the drugs. Further, the crack cocaine was sitting in plain view on a television stand in the bedroom, and the police found personal items belonging to Anthony and documents bearing his name in this bedroom. Accordingly, upon viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Anthony was in constructive possession of the cocaine.

{¶54} Additionally, the evidence of drug use in the common areas of the home, including cocaine residue on a CD case, in a frying pan, and on a scale, bolsters that Anthony was fully conscious of the drugs in his home. *State v. Molina*, 8th Dist. Cuyahoga No. 83731, 2004-Ohio-4347, ¶27 (finding defendant was aware of drug trafficking based on the "casual and pervasive presence of heroin and tools of trafficking" in her apartment.)

{¶55} Further, there was nothing reflecting that Michael had access to the locked bedroom at the time of the search. The testimony established that the door was locked when the police arrived and the only key they located was in Anthony's possession.

{¶56} Finally, even assuming that Michael also had access to the drugs in the locked bedroom as appellant contends, this does not vitiate Anthony's conviction since the brothers could have had joint possession and control of the drugs. *State v. Collier*, 8th Dist. Cuyahoga No. 78960, 2001 Ohio App. LEXIS 4663, *10 (October 18, 2001),

12

citing *State v. Smith*, 8th Dist. Cuyahoga No. 78277, 2001 Ohio App. LEXIS 2314 (May 24, 2001) (holding that "[j]oint possession * * * exists when two or more persons together have the ability to control an object, exclusive of others.") The trial court provided the jury instruction on joint possession, stating "[t]wo or more persons may have possession if together they have the ability to control it exclusive of others." Accordingly, Anthony's second assignment of error lacks merit.

{¶57} Anthony's third and final argument contends his conviction is against the manifest weight of the evidence. In reviewing matters based on the manifest weight of the evidence, an appellate court sits as the thirteenth juror and reviews the evidence to assess whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed * * * ." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶58} "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Ohio Constitution Article IV, Section 3(B)(3); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. We cannot reverse a conviction where the state has presented evidence allowing a reasonable trier of fact to conclude all of the elements of the offense were established beyond a reasonable doubt. *Thompkins,* supra. And an appellate court presumes that the trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

13

{¶59} Anthony alleges that the evidence was conflicting as to whether the drugs were his or his brother's. However, there was no evidence that Michael had the means to access the locked bedroom at the time of the search or the exclusive possession or control of the drugs in the bedroom. The jury heard the evidence and believed the state's version of the facts. Thus, we cannot find that it lost its way. Anthony's third assignment of error lacks merit and is overruled.

{¶60} Based on the foregoing, the judgment of the Trumbull County Court of Common Pleas is affirmed in part, reversed in part, and remanded.


TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.


_____


DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶61} I concur in the majority's analysis on the second and third assignments of error, since the weight and sufficiency of the evidence supported the determination that Hudson was in possession of cocaine. I write separately as to the first assignment of error, however, to emphasize concerns with the conclusion that a mixture containing cocaine cannot be weighed for the purposes of determining the offense level under R.C. 2925.11(C)(4)(e), but that only the pure cocaine within the mixture may be weighed.

{¶62} Initially, I agree that this matter must be remanded for resentencing of Hudson, since this holding is consistent with the Ohio Supreme Court's recent decision

14

in *State v. Gonzales*, ___ Ohio St.3d ___, 2016-Ohio-8319, ___ N.E.3d ___. This court is bound by the Supreme Court's holding. *See State v. Blair*, 11th Dist. Portage No. 2012-P-0145, 2013-Ohio-3477, ¶ 24. Since the weight of the pure cocaine was not established, it is necessary for the level of the felony to be decreased, pursuant to *Gonzales*.

{¶63} While this court must follow the majority's holding in *Gonzales*, I write separately to highlight the well-reasoned and persuasive analysis of the dissenting justices in that case. As the dissent aptly concluded, "[t]he lead opinion's interpretation introduces a purity or weight requirement for cocaine possession that is not found in the language of the statute or supported by the reality of how cocaine is produced, distributed, or consumed." *Gonzales* at ¶ 37 (O'Connor, P.J., dissenting).

{¶64} R.C. 2925.11(C)(4) states: "If the drug involved in the violation is cocaine *or a compound, mixture, preparation, or substance containing cocaine*, whoever violates division (A) of this section is guilty of possession of cocaine." (Emphasis added.) Under this language, a mixture or compound is also "cocaine" and should be weighed as such. The narrow interpretation espoused by the *Gonzales* majority will make it difficult to sentence many defendants guilty of possession of cocaine with anything greater than a fifth-degree felony, which is contrary to the statutory scheme laid out by the General Assembly.

{¶65} Further, it will be cumbersome for the criminal laboratories to change their current procedures for testing cocaine, as was established in the Ohio Attorney General's amicus brief in *Gonzales*. The dissenting opinion in *Gonzales* explains that, "because concentration levels vary considerably[,] * * * the state must—in every case—

15

reverse engineer the compound or mixture of cocaine to separate its parts and determine purity." *Gonzales* at ¶ 47.

**{¶66}** This also creates "an arbitrary purity distinction for cocaine-possession offenses even though the clear intent of the statute is to establish the appropriate penalty for cocaine possession by the weight of the drug compound involved." *Id.* There is no basis, under the current statutory language, for a conclusion that a small difference in purity should result in a greater punishment. Drugs of any quality, with greater filler, available to a larger number of users present a serious threat to society as a whole.

**{¶67}** Since the majority's interpretation of the statute creates an unworkable standard which would result in less effective control of cocaine use, I agree with the analysis advanced by the dissenting justices in *Gonzales*.

**{¶68}** For the foregoing reasons, and given the binding nature of the Supreme Court's opinion, I concur in judgment only with the majority's opinion.