WAITE, J.
{¶ 1} Appellant Antoine Tate appeals his conviction on one count of drug possession, in violation of R.C. 2925.11(A), (C)(4)(a), a felony of the fifth degree. His conviction is based on the recovery of less than one-tenth of a gram of a loose substance containing cocaine base or crack cocaine found in the bottom of a waste can during the execution of a search warrant at a residence on the south side of Youngstown, Ohio.
{¶ 2} Appellant contends that there was insufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. Appellant further contends that the state failed to establish within a reasonable degree of scientific certainty that the substance in question was cocaine. Finally, he asserts that an erroneous jury instruction affected the outcome of the trial. For the following reasons, Appellant's conviction is affirmed.
Law
{¶ 3} R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Possession of a controlled substance may be actual or constructive. State v. Wolery , 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). A person is in "constructive possession" if he is able to exercise dominion and control over an item, even if he does not have immediate physical possession of it. State v. Hankerson , 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus, overruled on other grounds in State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), syllabus; State v. Adams , 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 247. For constructive possession to exist, the person must be conscious of the presence of the object. Id. at 91, 434 N.E.2d 1362.
{¶ 4} Constructive possession may be proven by circumstantial evidence alone, but dominion and control may not be inferred based exclusively on access to the substance or through ownership or occupation of the premises where the substance *415 is found. State v. Soto , 8th Dist. No. 86390, 2006-Ohio-2319, 2006 WL 1281009, ¶ 27, citing, in part, R.C. 2925.01(K). Moreover, two or more persons may have joint constructive possession of the same object. State v. Smith , 8th Dist. No. 78277, 2001 WL 563077, at *3 (May 24, 2001) ("Joint possession exists when two or more persons together have the ability to control an object, exclusive of others.")
{¶ 5} Additionally, evidence of drug use in the common areas of a residence, (for instance, where cocaine residue is found on a CD case, in a frying pan, and on a scale) bolsters the inference that a defendant is fully conscious there are drugs in his home. State v. Hudson , 11th Dist., 2018-Ohio-133, 104 N.E.3d 25, ¶ 55, citing State v. Molina , 8th Dist. No. 83731, 2004-Ohio-4347, 2004 WL 1846133, ¶ 27, (finding defendant was aware of drug trafficking based on the "casual and pervasive presence of heroin and tools of trafficking" in her apartment.)
Facts
{¶ 6} As earlier stated, the charges at issue stemmed from the execution of a search warrant at a Youngstown residence. Five Youngstown Police Department officers and a forensic scientist from the Bureau of Criminal Identification and Investigation offered testimony at trial. Each officer testified to his closely-circumscribed role in the execution of the warrant at 833 Mercer Street, leaving the jury and the record on appeal with a somewhat incomplete narrative of the evening's events.
{¶ 7} Officer Francis Bigowsky testified that he was a scout, and that he surveilled various properties in the city for the purpose of detecting unlawful drug activity. His interest in the Mercer Street address was based on complaints about alleged drug sales at the residence and information from a confidential informant regarding the sale of crack cocaine. (Trial Tr., pp. 111-112.)
{¶ 8} Although Officer Bigowsky was not a member of the entry team, he did participate in the search as a "float," that is, an officer who is not assigned to search a specific part of the residence. In the living room, Officer Bigowsky recovered a Time Warner cable bill addressed to Appellant at the 833 Mercer Street address. (Trial Tr., p. 116.) He also recovered three digital scales, two in a drawer in the kitchen, and one in a cereal box on the top of the refrigerator, (Trial Tr., pp. 114, 127), as well as a loose substance at the bottom of a waste can in the kitchen, which field tested positive for cocaine. (Trial Tr., pp. 114, 118.) But for this substance, the waste can was empty. (Trial Tr., p. 115.)
{¶ 9} On cross-examination, Officer Bigowsky conceded that another man, Darrell Watkins, was present at the residence with Appellant when the search warrant was executed. (Trial Tr., p. 131.) He also conceded that neither the waste can nor the scales were dusted for fingerprints or tested for DNA. (Trial Tr., p. 128.) He estimated that the search warrant team numbered anywhere between ten to fifteen men. (Trial Tr., p. 125.)
{¶ 10} Officer Richard Geraci testified that there were "a few males" in the residence when the officers gained entry. He explained that the officers knocked and announced their presence, but when no one answered, they used force to open the door. (Trial Tr., p. 136.) Officer Geraci testified that, in his experience, occupants who do not answer the door are trying to get rid of evidence inside the house. (Trial Tr., p. 137.)
{¶ 11} Officers secured the occupants on the ground and handcuffed them before executing the search warrant. (Trial Tr., p.
*416 138.) Officer Geraci was in charge of creating a written inventory of all of the items recovered during the search. (Trial Tr., p. 139.)
{¶ 12} Officer Robert Patton testified the he was responsible for recovering identification from the occupants and searching their persons. When he frisked Appellant, Officer Patton found four packets of Suboxone strips, $371.00 in cash, and a driver's license in his wallet. Appellant's driver's license listed his residence as 913 Orange Street. (Trial Tr., pp. 130, 145.) Officer Patton testified that Suboxone strips were prescribed for patients attempting to overcome heroin addiction, but that there is a "black market" for individuals who abused the product as well. (Trial Tr., pp. 145-146.)
{¶ 13} Officer John S. Aeppli testified that he was assigned to search the living room and the dining room. He recovered a small bag of marijuana from an end table. (Trial Tr., p. 150.)
{¶ 14} Officer Jose Morales testified that he was assigned to the bedrooms, which were located on the second floor of the residence. Officer Morales recovered a bag of marijuana in a pair of jeans lying on top of the dresser and a debit card bearing Appellant's name, which was also found on top of the dresser, but was not in the jeans. (Trial Tr., pp. 154-156.)
{¶ 15} On cross-examination, Officer Morales conceded that he did not seize or photograph the jeans, and that the bedroom contained other men's clothes. Despite testifying that he was assigned to search the bedrooms, Officer Morales conceded that he did not search the second bedroom. (Trial Tr., p. 158.)
{¶ 16} Officer Michael Brindisi testified that he was responsible for photographing all of the items confiscated during the search. (Trial Tr., p. 163.) Officer Brindisi conceded that the debit card and marijuana were depicted in a single photograph, both being held by an officer, despite the fact that the debit card was found lying on the dresser and the marijuana was found in a pair of jeans lying separately on the dresser. (Trial Tr., p. 170.) There also was no photograph of the substance found in the waste can after it had been collected and put in an evidence bag. (Trial Tr., p. 168.)
{¶ 17} Martin Lewis, a BCI criminologist with over fifteen years of experience and who had testified in nearly 200 trials, tested the substance found in the waste can. (Trial Tr., p. 175.) His testimony was based on his written report, which was kept in the regular course of business at BCI. According to the report, the substance weighed less than .10 grams and was found to contain cocaine base or crack cocaine. (Trial Tr., p. 177.)
{¶ 18} On March 24, 2016, Appellant was indicted on one count of drug possession in violation of R.C. 2925.11(A), (C)(4)(a), a felony of the fifth degree, with a forfeiture specification (which related to the cocaine); one count of drug possession in violation of R.C. 2925.11(A), (C)(2)(a), a first degree misdemeanor (Suboxone ); and one count of illegal use of or possession with the intent to use drug paraphernalia in violation of R.C. 2925.14(C)(1), (F), a misdemeanor of the fourth degree. The state did not prosecute the charges lodged in counts two and three, instead relying on the presence of the Suboxone in Appellant's wallet and the marijuana and drug paraphernalia found in the residence to prosecute the possession charge in count one.
{¶ 19} A jury found Appellant guilty of violating R.C. 2925.11(A), (C)(4)(a), which criminalizes the possession of cocaine or a compound, mixture, preparation, or substance containing cocaine. Possession of *417 less than five grams of cocaine is a felony of the fifth degree. Appellant forfeited the $371.00 in cash confiscated during the search without objection, and was sentenced to a term of imprisonment of twelve months.
Analysis
{¶ 20} Appellant's first and second assignments of error challenge the evidence adduced at trial and will be addressed together, but out of order, for the purpose of clarity.
ASSIGNMENT OF ERROR NO. 1
THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR NO. 2
THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.
{¶ 21} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " State v. Maxwell , 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
{¶ 22} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Thompkins , 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) ; State v. Hunter , 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." Thompkins at 387, 678 N.E.2d 541.
{¶ 23} The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. State v. DeHass , 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis v. Flickinger , 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).
{¶ 24} In his opening argument, defense counsel stated that 833 Mercer Street was the residence of Appellant's aunt, and that Appellant paid for the cable television as a gift to his aunt. However, there was no testimony or other evidence offered at trial to establish that Appellant's aunt, or any other individual, resided at 833 Mercer Street.
{¶ 25} In his closing argument, defense counsel advanced the theory that the officers cherry-picked the evidence, choosing to forego the search of the second bedroom after finding Appellant's debit card on the dresser in the first bedroom. Defense counsel argued that there may have been other evidence ignored by the officers, including DNA and fingerprint evidence, that may have implicated another individual.
{¶ 26} Defense counsel also attempted to diffuse the notion that Appellant was attempting to secrete the substance by discarding it in the kitchen waste can when *418 the police knocked and announced. Defense counsel argued that Appellant would not leave a bag of marijuana on the end table, or discard cocaine in an empty waste can, when he could have discarded all of it in the kitchen sink. In fact, there was no testimony offered to establish Appellant's whereabouts in the home when the door was breached.
{¶ 27} In this appeal, Appellant asks us to focus on evidence that is not in the record, rather than considering the evidence offered at trial. While it is clear from the record that the search of the residence was abbreviated due to the discovery of evidence implicating Appellant, the evidence offered at trial was nevertheless sufficient to support Appellant's conviction. Despite the fact that Appellant's driver's license listed a different address, the record establishes that he was more than an occupant at 833 Mercer Street. The cable bill found in the living room was in his name and his debit card was found in one of the bedrooms. The evidence establishes that he had access to and control of both floors of the house.
{¶ 28} Of equal import, the presence of items commonly associated with the illegal sale of drugs found throughout the residence belies any argument that he was unaware of the presence of the cocaine. Marijuana was found in the living room and bedroom. Not one, but three scales were found in various parts of the kitchen. Suboxone was found in his wallet.
{¶ 29} The evidence establishes at least that Appellant spent a sufficient amount of time at 833 Mercer Street to finance the cable television service. Circumstantial evidence supports the conclusion that he maintained 833 Mercer Street either for personal or business purposes. Accordingly, we find that the presence of drugs and drug paraphernalia, coupled with indicia that Appellant was more than a simple occupant at 833 Mercer Street on the day the search was conducted, was sufficient to sustain his conviction for possession of cocaine.
{¶ 30} Likewise, we find that the jury did not lose its way in convicting Appellant for drug possession. Despite defense counsel's argument, no evidence was offered to establish that Appellant's aunt, or any other individual, resided at 833 Mercer Street. Consequently, no fact-based explanation was provided for Appellant's name on the cable bill. The evidence adduced at trial demonstrated that Appellant paid for a utility at the house, an entertainment service, and the presence of his debit card in the upstairs bedroom established that Appellant had access to and used both floors of the residence. Finally, drugs and drug paraphernalia located throughout the house evinces Appellant's awareness of their presence.
{¶ 31} Based on the evidence offered at trial, this record contains sufficient evidence to support Appellant's conviction, and his conviction is supported by the manifest weight of the evidence. Accordingly, Appellant's first and second assignments of error are without merit and are overruled.
ASSIGNMENT OF ERROR NO. 3
THE TRIAL COURT ERRED IN ADMITTING EXPERT TESTIMONY FROM THE BCI TECHNICIAN WHO TESTED THE DRUGS IN QUESTION.
{¶ 32} Decisions involving the admissibility of evidence are reviewed under an abuse of discretion standard. State v. Morris , 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19 ("It is well established that a trial court's decision to admit evidence is an evidentiary determination within the broad discretion of the *419 trial court and subject to review on an abuse-of-discretion standard.")
{¶ 33} Defense counsel did not object to the admission of Lewis' testimony at trial. An appellate court does not normally resolve an alleged error if it was never brought to the attention of the trial court "at a time when such error could have been avoided or corrected by the trial court." State v. Carter , 89 Ohio St.3d 593, 598, 734 N.E.2d 345 (2000). In the absence of objection, we may only examine the court's actions for plain error. Id.
{¶ 34} Plain error should be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Barnes , 94 Ohio St.3d 21, 759 N.E.2d 1240 (2002). A claim of plain error will not succeed unless, but for the error, the outcome of the trial would have been different: "the test for plain error is stringent. A party claiming plain error must show that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial." State v. Davis , 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 378.
{¶ 35} Evid.R. 702 sets forth the standard for determining the admissibility of expert testimony. State v. Jones , 90 Ohio St.3d 403, 416, 739 N.E.2d 300 (2000). Evid.R. 702(C) requires that an expert's testimony be "based on reliable scientific, technical, or other specialized information." However, a plurality of the Ohio Supreme Court recently recognized that, under Evid.R. 702, experts are not required to use any particular "magic words." State v. Beasley , 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 162 (Per O'Connor, C.J., with two justices concurring and two justices concurring in judgment only), citing Lucsik v. Kosdrosky , 8th Dist., 2017-Ohio-96, 79 N.E.3d 1284, ¶ 15.
{¶ 36} An expert's opinion is admissible so long as it provides evidence of more than mere possibility or speculation. Id. , citing Lucsik at ¶ 15 (expert testimony admissible even though not offered to "a reasonable degree of medical certainty"); Butler v. Minton , 6th Dist. No. E-05-061, 2006-Ohio-4800, 2006 WL 2640269, ¶ 17 (same); see also Johnson v. Memphis Light Gas & Water Div. , 695 Fed.Appx. 131, 136-137 (6th Cir. 2017) (same result under the Federal Rules of Evidence). Instead, the expert's testimony, when considered in its entirety, must be equivalent to an expression of probability. Lucsik at ¶ 15, citing Jeffrey v. Marietta Mem. Hosp. , 10th Dist. Nos. 11AP-492 and 11AP-502, 2013-Ohio-1055, 2013 WL 1187544, ¶ 48 ; Frye v. Weber & Sons Serv. Repair , 125 Ohio App.3d 507, 514, 708 N.E.2d 1066 (8th Dist. 1998).
{¶ 37} Defense counsel did not object to the trial court's declaration of Lewis as an expert. Lewis provided the following testimony based on a report he generated the previous week:
Q Okay. And what are the findings that are indicated on your laboratory report?
A The findings are that there was an off white substance weighing less than 0.10 grams and it was found to contain cocaine base or crack cocaine.
Q And, Mr. Lewis, how is cocaine base or crack cocaine classified in terms of it being a narcotic?
A It's classified as a Schedule II controlled substance in Ohio.
(Trial Tr., pp. 176-177.)
{¶ 38} Lewis did not testify regarding the specific test or tests he used to analyze the substance. He did not attest to the degree of likelihood that could be attributed to his findings. Defense counsel did *420 not cross-examine Lewis. Nonetheless, Lewis' testimony appears to meet the broad standard announced by the Ohio Supreme Court earlier this year in Beasley , supra .
{¶ 39} Lewis stated unequivocally that the substance tested was cocaine. In other words, Lewis' testimony does not establish the possibility that the substance is cocaine, but, instead, the certainty that the substance is cocaine. Consequently, the trial court did not commit plain error in admitting Lewis' testimony, and Appellant's third assignment of error is without merit and is overruled.
{¶ 40} Finally, although not offered as a separate assignment of error, Appellant contends that the trial court committed a substantial and prejudicial error in its jury instructions. Appellant takes issue with the following portion of the jury instructions:
The defendant is presumed to be innocent unless or until his guilt is established by proof beyond a reasonable doubt. So the defendant must be found guilty unless the state produces evidence which convinces you beyond a reasonable doubt of every essential element charged in the indictment. (Emphasis added.)
(Trial Tr., p. 207.)
{¶ 41} Defense counsel did not object to the jury instructions. Therefore, we review this issue only for plain error.
{¶ 42} The trial court correctly stated the state's burden of proof during its preliminary instructions. (Trial Tr., pp. 26-27.) Defense counsel correctly reiterated the state's burden during voir dire. (Trial Tr., pp. 48-49.) The trial court also correctly stated the burden of proof at the conclusion of the jury instructions:
If you find that the state proved beyond a reasonable doubt all of the essential elements of this crime of possession of cocaine, then your verdict must be guilty.
If you find that the state failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense of possession of cocaine, then your verdict must be not guilty.
(Trial Tr., p. 218.)
{¶ 43} Jury instructions must "correctly and completely state the law." Groob v. KeyBank , 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 32. In assessing jury instructions, a reviewing court must decide not only whether the instruction at issue is correct in the abstract but also whether it is potentially misleading. State v. White , 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 52. If an instruction is ambiguous, a reviewing court must determine " 'whether there is a reasonable likelihood that the jury has applied [it] in a way' that violates the Constitution." Estelle v. McGuire , 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), quoting Boyde v. California , 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). And when examining jury instructions, an appellate court should not judge a single instruction in artificial isolation, but instead should view it in the context of the overall charge. State v. Madrigal , 87 Ohio St.3d 378, 396, 721 N.E.2d 52 (2000).
{¶ 44} In State v. Wilks , --- Ohio St.3d ----, 2018-Ohio-1562, --- N.E.3d ----, the Ohio Supreme Court addressed a jury instruction that read, in pertinent part: "If you find that the state failed to prove beyond a reasonable doubt all the essential elements of aggravated murder as defined in Count 1, then your verdict must be not guilty of that offense." (Emphasis deleted.) Id. at ¶ 121. Appellant argued that the jury instruction could be misunderstood to read that reasonable doubt on fewer than all of the essential elements should nonetheless *421 result in a guilty verdict. In a review for plain error, the Court held that the state's burden of proof was correctly stated during various stages of the trial and that "[t]hese clear instructions remove any uncertainty that the jury found proof beyond a reasonable doubt as to each of the essential elements of the aggravated-murder charge." Id. at ¶ 128.
{¶ 45} The same is true here. Although an error occurred, and that error is obvious, there is no indication that it affected the outcome of the trial. The trial court's misstatement during the first part of the jury instructions was corrected at the conclusion of the jury instructions. Importantly, the state's burden of proof was reiterated several times during the trial. Consequently, this record reflects that the trial court did not commit plain error, as that term is defined in Ohio.
Conclusion
{¶ 46} In summary, Appellant's evidentiary challenges are not well taken, and the trial court did not commit plain error in its jury instructions. For the foregoing reasons, the judgment of the trial court is affirmed.
Donofrio, J., concurs.
Robb, P.J., concurs.