[Cite as *State v. Sanchez*, 2016-Ohio-542.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                        Court of Appeals No. S-14-030

      Appellee                                    Trial Court No. 12 CR 829

v.

Roberto R. Sanchez                          **DECISION AND JUDGMENT**

      Appellant                                   Decided:  February 12, 2016

* * * * *

Timothy Young, Ohio Public Defender, and Valerie Kunze,
Assistant State Public Defender, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Following a jury trial, defendant-appellant, Roberto Sanchez, appeals the

March 31, 2014 judgment of the Sandusky County Court of Common Pleas convicting

him of three counts of drug trafficking.  For the reasons that follow, we reverse.

## I. Background

{¶ 2} The Drug Enforcement Agency ("DEA") arranged for a confidential informant ("CI") to purchase drugs from Roberto Sanchez. Two transactions are at issue in this case. The first occurred on July 1, 2008. At that time, the CI purchased both crack and powder cocaine from Sanchez. The second occurred on August 14, 2008. The CI purchased only crack cocaine that time.

{¶ 3} The evidence obtained against Sanchez was part of a larger investigation, so authorities delayed filing charges. Sanchez was indicted on July 18, 2012. In Count 2 of the indictment he was charged with trafficking in crack cocaine in an amount exceeding 25 grams but less than 100 grams, a violation of R.C. 2925.03(A)(1)(C)(4)(f); in Count 3 he was charged with trafficking in cocaine in an amount exceeding five grams but less than 10 grams, that is not crack cocaine, a violation of R.C. 2925.03(A)(1)(C)(4)(c); and in Count 4, he was charged with trafficking in crack cocaine in an amount exceeding five grams but less than 10 grams, a violation of R.C. 2925.03(A)(1)(C)(4)(d). The state did not pursue Count 1 of the indictment.

{¶ 4} The case was tried to a jury beginning February 4, 2014, and lasted for three days. Sanchez was convicted of all counts. On March 31, 2014, the trial court sentenced Sanchez to eight years in prison on Count 2, 12 months on Count 3, and 36 months on Count 4, to be served concurrently.

{¶ 5} Sanchez appealed from the court's March 31, 2014 judgment. He assigns the following errors for our review:

2.

First Assignment of Error

The trial court erred when it convicted and sentenced Roberto Sanchez on two counts of trafficking in cocaine that occurred on the same day as part of the same transaction.

Second Assignment of Error

The trial court erred when it convicted and sentenced Roberto Sanchez to an enhanced level of trafficking in cocaine based on a gross weight that included other material instead of the weight of the actual cocaine.

Third Assignment of Error

The trial court erred when it convicted and sentenced Roberto Sanchez to a third-degree felony for trafficking in cocaine because the amount of the cocaine involved did not reach the statutory threshold for a third-degree felony under R.C. 2925.03(A)(1)(C)(4)(d).

Fourth Assignment of Error

Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when it failed to object to inadmissible hearsay.

## II. Law and Analysis

**{¶ 6}** Before addressing Sanchez's assignments of error, we observe that R.C. 2925.03 has been revised since the dates the offenses were committed. When Sanchez committed the subject offenses in 2008, R.C. 2925.03 differentiated between crack cocaine and powder cocaine and heightened the degree of the offense and potential penalty where the substance at issue was crack cocaine. On September 30, 2011, H.B. 86 became effective. That legislation eliminated the distinction between criminal penalties for drug offenses involving crack and powder cocaine. It also altered the threshold quantities for determining the level of the offense.

**{¶ 7}** For instance, under the version of R.C. 2925.03(A)(1)(C)(4)(f) in effect in 2008, trafficking in powder cocaine was a first-degree felony if the amount of cocaine exceeded 500 grams, but was less than 1000 grams; trafficking in *crack* cocaine was a first-degree felony if the amount of crack cocaine exceeded 25 grams, but was less than 100 grams. Following the effective date of H.B. 86, there is no distinction between powder and crack cocaine, and trafficking in cocaine is a first-degree felony if the amount of cocaine exceeds 27 grams, but is less than 100 grams. Sanchez was tried and sentenced under the statute as it existed in 2008. He should have been tried and sentenced under the post-H.B. 86 version of the statute. *State v. Limoli*, 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.2d 641, syllabus.

**{¶ 8}** We also observe that Sanchez failed to object at trial to any of the errors of which he now complains. We, therefore, conduct a plain-error analysis of each of his

4.

assignments of error under Crim.R. 52(B).  *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 41 (1st Dist.), *aff'd,* 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335.  Under Crim.R. 52(B), Sanchez must establish plain error affecting a substantial right.  Plain error exists only if the outcome of the trial would have been different but for the error.  *Id.*

{¶ 9} With that backdrop, we turn to Sanchez's assignments of error.

## A.  First Assignment of Error:  Did the sale of crack and powder cocaine on July 1, 2008 constitute one transaction?

{¶ 10} On July 1, 2008, Sanchez sold both crack and powder cocaine to the CI.  In his first assignment of error, Sanchez argues that because R.C. 2925.03 no longer distinguishes between crack and powder cocaine, the trial court erred when it convicted him and sentenced him on two counts of trafficking in cocaine arising out of the July 1, 2008 transaction.

{¶ 11} The simultaneous possession (or other prohibited act) of different drugs can form the basis for multiple offenses.  *State v. Heflin*, 6th Dist. Lucas No. L-11-1173, 2012-Ohio-3988, ¶ 13.  Consistent with this principle, when the legislature treated crack cocaine and powder cocaine as distinct and separate drugs for purposes of assigning the degree of the offense and resulting penalty, some courts refused to find error where the defendant was charged with, convicted of, and sentenced for multiple offenses arising from the simultaneous sale or possession of both powder and crack cocaine.  *See, e.g., State v. Crisp*, 3d Dist. Allen No. 1-05-45, 2006-Ohio-2509, ¶ 22; *State v. Siefer*,

5.

No. 5-09-24, 2011-Ohio-1868, ¶ 26. But the Ohio Supreme Court has since recognized that "[c]rack cocaine is not a different substance than cocaine; it is simply a different form of the same substance." *Limoli*, 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.3d 641, at ¶ 2.

{¶ 12} Given the Supreme Court's recognition that crack cocaine and powder cocaine are not different substances, we are persuaded that the rationale supporting multiple criminal counts for the simultaneous sale of both crack and powder cocaine during the same transaction has been effectively eliminated. We, therefore, find that Sanchez's conviction on two counts in connection with the July 1, 2008 sale of cocaine was contrary to law. *See State v. Marshall,* 12th Dist. Warren No. CA89-12-074, 1990 WL 129459, *4 (Sept. 10, 1990) ("[T]he state's case rested upon the theory that the crack and powder mixture were distinct substances and that appellant's possession of each was a separate act or offense. If this theory was true, multiple punishments would be permissible. * * * Here, however, it is undisputed that the principal active ingredient and only controlled substance within either sample was cocaine. Therefore, the rock and the powder mixture must be treated as one and the same Schedule II controlled substance, cocaine.").

{¶ 13} We find Sanchez's first assignment of error well-taken.

6.

**B. Second Assignment of Error: Did the court err in convicting Sanchez**

**of an enhanced level of trafficking in cocaine based on gross weight and**

**not on the weight of actual cocaine?**

{¶ 14} In his second assignment of error, Sanchez claims that the trial court erred when it convicted him of higher-level felonies based on the gross weight, instead of the actual weight, of the cocaine. For the reasons set forth in our decision in *State v. Gonzalez,* 6th Dist. Wood No. WD-13-086, 2015-Ohio-461, ¶ 42-48, *appeal allowed*, *State v. Gonzalez,* 143 Ohio St. 3d 1403, 2015-Ohio-2747, 34 N.E.3d 132, we agree with Sanchez and find that his conviction and sentence were contrary to law.

{¶ 15} An analysis of the substances was performed by the DEA's North Central Laboratory in Chicago, Illinois. According to the laboratory reports which were admitted as exhibits at trial, the lab determined the net weight of the crack cocaine purchased on July 1, 2008, to be 34.1 grams, 42 percent of which was actual cocaine. The actual amount of crack cocaine was 14.3 grams. The powder cocaine purchased on July 1, 2008, had a net weight of 4.3 grams, 78.3 percent of which was actual cocaine. The actual amount of powder cocaine was 3.3 grams. And the crack cocaine purchased on August 14, 2008, had a net weight of 6.8 grams, 70.9 percent of which was actual cocaine. The actual amount of crack cocaine was 4.8 grams.

{¶ 16} Under the post-H.B. 86 version of R.C. 2925.03(A)(1)(C)(4)(f), trafficking in cocaine is a first-degree felony "if the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine." Under R.C.

7.

2925.03(A)(1)(C)(4)(e), it is a second-degree felony "if the amount of the drug involved equals or exceeds twenty grams but is less than twenty-seven grams of cocaine." Under R.C. 2925.03(A)(1)(C)(4)(d), it is a third-degree felony "if the amount of the drug involved equals or exceeds ten grams but is less than twenty grams of cocaine." Under R.C. 2925.03(A)(1)(C)(4)(c), it is a fourth-degree felony "if the amount of the drug involved equals or exceeds five grams but is less than ten grams of cocaine." And under R.C. 2925.03(A)(1)(C)(4)(a), if the amount of the drug involved is less than five grams of cocaine, it is a fifth-degree felony.

{¶ 17} With respect to Count 2, Sanchez was convicted of a first-degree felony based on the gross weight of 34.1 grams. With the actual weight of cocaine at 14.3 grams, Count 2 should have been a third-degree felony. The cocaine giving rise to Count 3 had an actual weight of 3.3 grams. Adding together the quantities of actual cocaine contained in the powder and the crack cocaine sold on July 1, 2008, totals 17.6 grams. That amount does not enhance the offense beyond a third-degree felony.

{¶ 18} As for Count 4, Sanchez claims that no witness testified at trial as to the actual weight of the cocaine, thus Count 4 should be lowered to a fifth-degree felony. However, the copy of the laboratory report admitted into evidence as exhibit No. 8 lists both the gross weight and the actual weight of the cocaine. With an actual weight of 4.8 grams, we agree with Sanchez that Count 4 should have been a fifth-degree felony, not a third-degree felony.

{¶ 19} We find Sanchez's second assignment of error well-taken.

8.

**C. Third Assignment of Error: Was Sanchez convicted and sentenced**

**based on a distinction between crack and powder cocaine that**

**has now been eliminated in the Revised Code?**

{¶ 20} In his third assignment of error, Sanchez claims that even if the cocaine at issue in Count 4 weighed 6.8 grams, this would constitute a fourth-degree felony—not a third-degree felony. The trial court judgment entry identified Count 4 as a third-degree felony. We agree with Sanchez that with the distinction between crack and powder cocaine having been eliminated, at most, Count 4 was a fourth-degree felony. But, as we explained in the previous section, the lab report, which was entered as an exhibit, indicated that the actual weight of the cocaine was 4.8 grams. With an actual weight less than five grams, the evidence supported no greater than a fifth-degree felony.

{¶ 21} We find Sanchez's third assignment of error well-taken.

**D. Fourth Assignment of Error: Was Sanchez deprived of effective**

**assistance of counsel when his attorney failed to object to hearsay testimony?**

{¶ 22} Detective Mark Apple, the lead detective in the case, testified at trial about the information received from the DEA lab in Chicago, Illinois, including the gross weight and actual weight of the powder and crack cocaine sold in the July 1, 2008 transaction, and the gross weight of the cocaine involved in the August 14, 2008 transaction. In his fourth assignment of error, Sanchez argues that his trial counsel was ineffective for failing to object to this testimony as inadmissible hearsay. He claims that

9.

if counsel had objected, the weight and purity levels of the cocaine would not have been admitted at trial.

{¶ 23} In order to establish a claim for ineffective assistance of counsel, the appellant must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced to a degree that deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 699-692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The appellant must prove "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-88. Because there are multiple ways to provide effective counsel in each case, judicial scrutiny of counsel's performance is highly deferential. *Strickland* at 687-88.

{¶ 24} Courts have recognized that R.C. 2925.51 creates an exception to the hearsay rules. *State v. Hudson,* 8th Dist. Cuyahoga No. 79010, 2002 WL 472304, *2 (Mar. 28, 2002). Section (A) of that statute provides that a laboratory report of a controlled substance performed by a laboratory operated by a law enforcement agency stating that the substance at issue has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance is prima facie evidence of the content, identity, and weight of the substance. The section requires that the report be signed and notarized by the person that performed the analysis and that the signer state his or her education and attest that scientifically accepted tests were performed with due caution and that the evidence was handled by accepted procedures. R.C. 2925.51(B)

10.

requires the prosecutor to serve a copy of the report on the defense. And R.C. 2925.51(C) provides that the report cannot constitute prima facie evidence if the defense serves upon the prosecutor a written request for the testimony of the signer of the report within seven days after receiving the lab report.

{¶ 25} The record reflects that the lab analyses took place at a DEA laboratory. The proper attestations were attached to the reports, as were the curriculum vitae of the chemists performing the analyses. The prosecutor served the required R.C. 2925.51 notice, and there is nothing in the record to suggest that counsel requested the testimony of the persons performing the analyses. We, therefore, find that testimony concerning the weight and content of the cocaine did not constitute hearsay evidence and counsel was not ineffective for failing to object.

{¶ 26} We find Sanchez's fourth assignment of error not well-taken.

### III. Conclusion

{¶ 27} We find Sanchez's first three assignments of error well-taken, and his fourth assignment of error not well-taken. We conclude that Sanchez should have been convicted and sentenced for one third-degree felony in connection with the July 1, 2008 transaction, and one fifth-degree felony in connection with the August 14, 2008 transaction. We reverse the March 31, 2014 judgment of the Sandusky County Court of Common Pleas and remand for proceedings consistent with this decision. Costs are assessed to the state pursuant to App.R. 24.

Judgment reversed.

11.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                            JUDGE

Arlene Singer, J.

                                            _____
James D. Jensen, P.J.                                       JUDGE
CONCUR.

                                            _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.