[Cite as *State v. Ojezua*, 2018-Ohio-3812.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                           :
                                        :
        Plaintiff-Appellee              :       Appellate Case No. 27768
                                        :
v.                                      :       Trial Court Case No. 2014-CR-2837
                                        :
VICTOR OJEZUA                           :       (Criminal Appeal from
                                        :       Common Pleas Court)
        Defendant-Appellant             :
                                        :

. . . . . . . . . .

O P I N I O N

Rendered on the 21st day of September, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088791, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

VICTOR OJEZUA, Inmate No. 739-057, Pickaway Correctional Institution, P.O. Box 209, Orient, Ohio 43146
        Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Defendant-Appellant, Victor Ojezua, appeals from his conviction and sentence following a no-contest plea to possession of cocaine in an amount of more than 20 grams but less than 27 grams. On February 12, 2018, Ojezua's assigned counsel filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating there are no issues with arguable merit to present on appeal, and raising two potential assignments of error.

**{¶ 2}** On February 14, 2018, we notified Ojezua that his counsel found no meritorious claims for review and granted him 60 days to file a pro se brief assigning any errors. Thereafter, Ojezua filed a pro se brief raising five assignments of error that challenge certain aspects of his conviction. The State declined to file a brief opposing Ojezua's assigned errors.

**{¶ 3}** After reviewing Ojezua's pro se assigned errors and his counsel's potential assignments of error, we find they are without arguable merit. Furthermore, after conducting our independent *Anders* review, we find no issues with arguable merit for Ojezua to advance on appeal. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 4}** Ojezua was indicted on October 6, 2014, on one count of possessing cocaine in an amount equaling or exceeding 20 grams, but less than 27 grams, in violation of R.C. 2925.11(A). The charge arose after police officers discovered cocaine on Ojezua's person during a July 8, 2014 traffic stop. Ojezua was arrested and released, but no

indictment was filed until October 6, 2014. After being served with the warrant and arrested on December 5, 2014, he then pled not guilty on December 9, 2014. At that time, a security bond was set in the amount of $25,000. Although a public defender was appointed, Ojezua retained private counsel, who filed a motion for bond review on December 18, 2014, alleging that Ojezua was gainfully employed and wished to remain employed during the proceedings. On December 29, 2014, the court continued the bond as previously set.

{¶ 5} Ojezua's private counsel was substituted for the public defender on December 30, 2014. On February 23, 2015, Ojezua filed another motion for bond review. In the motion, Ojezua alleged that he was a sub-contractor for J.A.E. Enterprise and had been employed there since 2008. In addition, Ojezua worked part-time as a short order cook for a restaurant. He indicated he would like to continue with his employment to assist his mother and son with their financial needs. On February 24, 2015, the court again denied the motion to change the previously established bond.

{¶ 6} On March 10, 2015, Ojezua filed another motion to review his bond, alleging the same grounds. The trial court then filed an entry and order on March 20, 2015, setting Ojezua's bond as follows: "Secured by 10% deposit in the amount of $25,000 – 10% blanket with 12 CR3251."[1]

---

[1] In Montgomery County Common Pleas Court Case No. 12 CR 3251, Ojezua had previously pled guilty to possession of cocaine in an amount of more than 5 and less than 10 grams, a fourth-degree felony. On June 6, 2013, he was placed on up to five years of community control. However, Ojezua's community control was subsequently revoked, and he was arrested on December 5, 2014 in connection with his failure to appear at a scheduled revocation hearing. Consequently, Ojezua was in jail on both that charge and the charge involved in the current case. On November 20, 2015, the court filed a termination entry in Case No. 12 CR 3251, sentencing Ojezua to 15 months in prison, and credited Ojezua with 120 days of jail time.

{¶ 7} Trial had been set for March 30, 2015. However, on March 23, 2015, Ojezua filed a motion to suppress, arguing, in part, that the evidence seized from his person had been discovered through an unlawful search without his consent. On April 9 and 10, 2015, the trial court held a two-day hearing on the motion.

{¶ 8} On July 27, 2015, the court filed an entry granting the motion to suppress. While the court found no issue with the stop of the vehicle in which Ojezua was a passenger, the court concluded that Ojezua failed to consent to a pat-down search, during which drugs were discovered. In addition, the court found no evidence that the pat-down was necessary for officer safety. The State appealed to our court on August 3, 2015.

{¶ 9} On April 22, 2016, we reversed the trial court's judgment. *See State v. Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14 (2d Dist.). We initially concluded that competent, credible evidence in the record supported "the trial court's finding that there was no clear and positive evidence of consent." *Id.* at ¶ 19. Nonetheless, we held that reasonable suspicion for the search existed due to the "collective knowledge doctrine." We noted that "[u]nder this doctrine, 'police officers may develop the reasonable suspicion necessary to effect a search or seizure based on information obtained and relayed by fellow officers.' " *Id.* at ¶ 30, quoting *United States v. Chambers*, 638 Fed.Appx. 437, 440, fn. 4 (6th Cir.2015). (Other citations omitted.) We, therefore, reversed and remanded the case to the trial court for further proceedings.

{¶ 10} On June 3, 2016, Ojezua appealed to the Supreme Court of Ohio, which declined jurisdiction on September 14, 2016. *See State v. Ojezua*, 146 Ohio St.3d 1504, 2016-Ohio-5792, 58 N.E.3d 1175. Subsequently, on October 14, 2016, Ojezua filed a waiver of speedy trial time requirements. He then filed a motion on October 17, 2016,

asking that the court require the State to retest and reweigh the cocaine that had been seized. *See* Doc. #18. After the trial court filed an order setting submission dates for memoranda relating to the motion, Ojezua withdrew the motion without prejudice on November 22, 2016.

{¶ 11} On November 18, 2016, the court filed an order setting the matter for a jury trial to begin on March 13, 2017. However, on January 17, 2017, Ojezua filed a motion seeking a reduction of his charge to a fifth-degree felony, based on the decision in *State v. Gonzales*, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405 (*Gonzales I)*, which had been issued on December 23, 2016. This decision held that, in prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)(b) through (f), the State must "prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture." *Id.* at ¶ 1.[2]

{¶ 12} The State objected to the motion on January 30, 2017, and Ojezua filed a reply memorandum on February 22, 2017. At that time, Ojezua also withdrew his previous speedy trial waiver and demanded an immediate trial (the trial had already been scheduled for March 13, 2017). The trial court then held an evidentiary hearing on March 2, 2017, concerning the motion to reduce the charges. During the hearing, the State orally moved to dismiss the indictment without prejudice pursuant to Crim.R. 48(A). However, no action was taken on this request, and on March 6, 2017, the State filed a motion to withdraw its oral motion. The State's request was based on the intervening

---

[2] The Supreme Court of Ohio reversed this decision a few months later, on March 6, 2017. *See State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419 (*Gonzales II)*. Consequently, the amount of cocaine no longer had to be separated from the filler for purposes of determining its weight.

decision in *Gonzales II*. On March 7, 2017, Ojezua filed another motion requesting an order that would require the State to retest and reweigh the cocaine.

{¶ 13} On March 10, 2017, the trial court filed an entry granting the State's motion to withdraw its oral motion to dismiss the indictment. The court also overruled Ojezua's request to reweigh the cocaine. On the same day, Ojezua filed a motion to dismiss based on speedy trial violations. However, on March 10, 2017, Ojezua also pled no contest to the charge as indicted, and the court set a sentencing hearing for March 29, 2017. *See* Doc. # 46 and Doc. #47. This hearing did not go forward because Ojezua filed an affidavit of indigency on March 20, 2017. After finding Ojezua indigent, the court appointed an attorney to represent Ojezua on April 4, 2017.

{¶ 14} Subsequently, on April 6, 2017, Ojezua filed a $50,000 bail bond and was released from custody. On April 12, 2017, he filed a motion to withdraw his plea, alleging that the plea failed to conform to Crim.R. 11(C)(2). Before receiving a ruling on the motion to withdraw his plea, Ojezua filed a motion on June 26, 2017, asking the court to appoint an expert witness to independently weigh the cocaine.

{¶ 15} On July 5, 2017, the trial court filed an entry allowing Ojezua to withdraw his no contest plea, based on Ojezua's testimony at the hearing on the motion to withdraw, which indicated that he did not understand the consequences he faced. Specifically, Ojezua was unaware that he would not receive jail credit in this case for the time he had served on the probation revocation. *See* Doc. #83, Decision and Order Granting Defendant's Motion to Withdraw Plea, p. 2. The court then set the matter for a jury trial to begin on August 28, 2017.

{¶ 16} On July 26, 2017, the trial court overruled Ojezua's motion for the court to

appoint and pay an expert witness. Subsequently, on August 23, 2017, Ojezua again pled no contest to the offense as charged; the plea was filed on August 24, 2017. The matter was referred for a presentence investigation ("PSI"), and on October 12, 2017, the court sentenced Ojezua to three years in prison. Ojezua timely appealed from his conviction and sentence.

## II. Request to Appoint Expert to Reweigh Evidence

{¶ 17} As was noted, Ojezua's appellate counsel filed an *Anders* brief, and explained that he found no issues with arguable merit. Counsel noted he had considered and rejected two issues. Regarding the first issue, Counsel phrased it as follows:

> The Trial Court Did Not Abuse Its Discretion in Overruling Appellant's
>
> Request to Appoint an Expert to Reweigh Evidence Without a Hearing.

{¶ 18} As noted, the trial court overruled Ojezua's motion to appoint an expert to reweigh the drugs. Appellate counsel offered two reasons for concluding that a challenge to this decision lacked merit: (1) the motion was untimely under Crim.R. 12(D); and (2) Ojezua was not entitled under R.C. 2925.51(F) to have the drugs reweighed.

{¶ 19} In an *Anders* review, we are required to decide "after a full examination of all the proceedings," whether an appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. *See also Penson v. Ohio*, 488 U.S. 75, 84-85, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Issues are not frivolous simply because the State "can be expected to present a strong argument in reply." *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Instead, an issue will lack arguable merit "if on the facts and law involved, no responsible contention can be made that it offers a basis for

reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4.

{¶ 20} As to counsel's first point, Crim. R. 12(C) states that "[p]rior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." However, Crim. R. 12(D) also states, in relevant part, that "[a]ll pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier." Accordingly, Ojezua's motion for an expert must have been filed within 35 days after his arraignment on December 9, 2014.

{¶ 21} Ojezua's request for appointment of an expert was clearly untimely, as it was filed on June 26, 2017, more than two and a half years after he was arraigned. Counsel was appointed for Ojezua on December 10, 2014, and there was ample time to ask for appointment of an expert during the 35-day period. No motion was made then, nor was a motion made thereafter, during the next seven months before Ojezua's motion to suppress was granted and an appeal was taken. After the Supreme Court of Ohio declined jurisdiction over Ojezua's appeal in September 2016, Ojezua still waited more than nine more months before asking for an expert.

{¶ 22} Furthermore, when Ojezua moved for appointment of an expert, he had already pled no contest to the charge. Although Ojezua had filed a motion to withdraw his plea before asking for an expert, his attempt to withdraw his plea had nothing to do with the merits of the case. Instead, Ojezua asserted, and was granted, the right to withdraw his plea because he was unaware that jail time for the probation revocation would not apply to the sentence in this case.

{¶ 23} It is true that under Crim. R 12(D), courts may extend the time for making pretrial motions "in the interests of justice." However, Ojezua did not assert any such grounds in the trial court. Courts review denial of permission to file untimely pretrial motions under an abuse of discretion standard. *State v. Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶ 35. An abuse of discretion means that the trial court acted unconscionably, arbitrarily, or unreasonably. *Id.*

{¶ 24} Given that Ojezua's motion was clearly untimely, and that Ojezua failed to even attempt to furnish a justification in the trial court, there is no basis on which we could even arguably conclude that the trial court abused its discretion in denying the request for appointment of an expert.

{¶ 25} Appellate counsel's second point is that under R.C. 2925.51(F), Ojezua was not entitled to have the drug "reweighed." This is also correct. R.C. 2925.51(F) states, in pertinent part, that:

> * * * [A]ny person who is accused of a violation of this chapter * * * that involves a bulk amount of a controlled substance, or any multiple thereof, or who is accused of a violation of section 2925.11 of the Revised Code, other than a minor misdemeanor violation, that involves marihuana, is entitled, upon written request made to the prosecuting attorney, to have a laboratory analyst of the accused's choice, or, if the accused is indigent, a qualified laboratory analyst appointed by the court present at a measurement or weighing of the substance that is the basis of the alleged violation.

{¶ 26} In its decision overruling Ojezua's motion for an expert, the trial court noted

that Ojezua was arrested on July 8, 2014, and that the laboratory report on the drugs was dated July 25, 2014. Under the statute, Ojezua had the right to make a written request to the prosecution to have an analyst, either retained or appointed, present at the time of the drugs were weighed. However, in the absence of a request, the State was allowed to weigh the evidence without the presence of Ojezua's analyst. *See, e.g., State v. Reed*, 10th Dist. Franklin No. 01AP-247, 2002 WL 243281, *5 (Feb. 21, 2002). Ojezua made no such request. Furthermore, the State has no duty to inform defendants of their rights under R.C. 2925.51(F). *State v. Turner*, 12th Dist. Butler No. CA94-04-101, 1995 WL 31600, *3 (Jan. 30, 1995).

{¶ 27} In addition, R.C. 2925.51(F) does not give defendants a right to "reweigh" drugs; to the contrary, this division of the statute makes no reference to reweighing. *State v. Black*, 12th Dist. Warren No. CA2016-04-032, 2016-Ohio-7914, ¶ 8, quoting *State v. Baker*, 12th Dist. Fayette No. CA2010-11-033, 2011-Ohio-3431, ¶ 12 (stating that " 'a person accused of violating R.C. Chapter 2925 is entitled to an independent analysis of the drugs, he is not entitled to an independent weighing thereof' ").

{¶ 28} In this context, the only related right the statute provides is for defendants to file written requests with the trial court to preserve a sample of a drug. *See* R.C. 2925.51(E) (allowing defendants to make a written request to have a portion of the drugs in question "preserved for the benefit of independent analysis * * * "). The sample is required to be representative to allow a "thorough scientific analysis concerning the identity of the substance or substances." *Id*. However, Ojezua did not ask, under R.C. 2925.51(E), to analyze the drugs to identity the substances; instead, his request in the trial court concerned reweighing of the drugs.

{¶ 29} Accordingly, we agree with appellate counsel that no responsible contention can be made that this potential assignment of error presents a basis for reversal. *Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, at ¶ 8.

### III.   Abuse of Discretion in Ordering Fine

{¶ 30} The second potential assignment of error that appellate counsel raised was stated as follows:

> The Trial Court Did Not Abuse Its Discretion in Ordering Appellant to Pay a Mandatory Fine.

{¶ 31} The trial court found that Ojezua was not indigent for purposes of paying the statutory fine for his second-degree felony conviction under R.C. 2925.11, and it imposed a $7,500 fine (one-half the mandatory fine of $15,000 for a second-degree felony).   Under this potential assignment of error, appellate counsel notes that while Ojezua filed an affidavit of indigency, the trial court stated during the sentencing hearing that, even according to Ojezua's own affidavit, Ojezua was employable in the future and would be able to pay the fine.   According to appellate counsel, the record contains no evidence contradicting this fact.

{¶ 32} After reviewing the record, we agree that an appeal on this basis would be wholly frivolous.   R.C. 2929.18(B)(1) states, in pertinent part, that:

> For a first, second, or third degree felony violation of any provision of Chapter 2925, * * * the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to

division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

**{¶ 33}** The fine stated in R.C. 2929.18(A)(3) is $15,000, and the trial court imposed half that amount. Offenders who file affidavits alleging that they are indigent and cannot pay mandatory fines are not automatically entitled to a waiver of their fines. *State v. Gipson*, 80 Ohio St. 3d 626, 634, 687 N.E.2d 750 (1998). Defendants have the burden of affirmatively demonstrating that they are indigent and are "*unable to pay* the mandatory fine." (Emphasis sic.) *Id.* at 635. R.C. 2929.19(B)(5) also requires that before the court imposes a financial sanction under R.C. 2929.18, it "shall consider the offender's present and future ability to pay the amount of the sanction or fine."

**{¶ 34}** "The trial court does not need to hold a hearing on the issue of financial sanctions, and there are no express factors that the court must take into consideration or make on the record." *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 57 (2d Dist.). However, the record "should contain 'evidence that the trial court considered the offender's present and future ability to pay before imposing the sanction of restitution.' " *Id.*, quoting *State v. Robinson*, 3d Dist. Hancock No. 5-04-12, 2004-Ohio-5346, ¶ 17.

**{¶ 35}** In the affidavit of indigency, Ojezua stated that he was currently employed at a pay rate of about $300 per week, but that his pay would end when he was incarcerated. In considering Ojezua's ability to pay, the court observed that it had read

letters on behalf of Ojezua that referenced his employment, and that, even according to Ojezua's affidavit, he would be employable. Transcript of Sentencing Hearing, pp. 6-7. The court, therefore, found that Ojezua would be able to pay the $7,500 fine.

{¶ 36} Trial court decisions on offenders' ability to pay mandatory fines are reviewed for abuse of discretion. *State v. Barker*, 2d Dist. Montgomery No. 26061, 2014-Ohio-3946, ¶ 16. Again, an abuse of discretion means that the trial court acted unconscionably, arbitrarily, or unreasonably. *Burns*, 2d Dist. Montgomery No. 22674, 2010-Ohio-2831, at ¶ 35.

{¶ 37} We have reviewed the entire record, including the PSI report, and the facts in the record indicate that Ojezua would be employable on release from prison and would have the future ability to pay a fine. There are no facts indicating otherwise. Ojezua was only 38 years old at the time of the PSI, was in good health, and had been steadily employed in various types of construction work for many years. In seeking release on bond, Ojezua also stressed his employment. In view of this evidence, contending that the trial court abused its discretion in concluding that Ojezua would have the future ability to pay a fine would be wholly frivolous.


IV. Issues Presented by Ojezua

{¶ 38} After we gave Ojezua an opportunity to present his own arguments, he filed a pro se brief on June 18, 2018, raising five potential assignments of error. The State has declined to respond, and we will address the matters that Ojezua raised.


A. Denial of Motion to Have Drugs Retested and Reweighed

**{¶ 39}** Ojezua's first assignment of error states that:

When There Is a Pure Question of Law[,] the Trial Court Abused Its Discretion in Overruling the Appellant's Request to Appoint an Expert to Retest & Reweigh the Evidence Without A Hearing [and] Denying Appellant's Constitutional Rights of Due Process in Violation of the Ohio and U.S. Constitution.

**{¶ 40}** In connection with this proposed assignment of error, Ojezua appears to contend that the trial court committed an error of law, or structural error, when it denied his motion to retest and reweigh the evidence without first holding a hearing. We have previously addressed the denial of the motion to appoint an expert and will not consider that point further.

**{¶ 41}** However, the decision that Ojezua references in his brief is the court's decision on March 10, 2017, which overruled Ojezua's request to retest and reweigh the cocaine. *See* Doc. #44, Decision and Order Granting the State's Motion to Withdraw the Request for Nolle and Overruling Defendant's Motion to Retest/Reweigh.

**{¶ 42}** In the decision, the court noted as follows:

This trial in this case was set November 11, 2016; the case is over two years old having a motion to suppress litigated up to the Court of Appeals and back down to the trial court. In short, the request to reweigh the drugs in this case three working days before trial is not reasonable and the Court OVERRULES same.

Doc. #44 at p.1.

**{¶ 43}** Ojezua argues that the court misstated the law because Crim.R. 12(D)

requires pretrial motions to be made seven days before trial, not "seven business/working days." Brief of Victor Ojezua, pp. 3-4. However, Ojezua misreads Crim.R. 12(D). As we said earlier, Crim.R. 12(D) requires that pretrial motions be made "within thirty-five days after arraignment or seven days before trial, *whichever is earlier.*" (Emphasis added.)

{¶ 44} Thus, a defendant has, at the most, 35 days after arraignment to file pretrial motions. If trial, for example, were scheduled 25 days after arraignment, the defendant would have to file pretrial motions seven days before that date, even if 35 days had not yet elapsed. In this case, neither deadline in Crim.R 12(D) was met; instead, Ojezua filed the motion in question on March 7, 2017 (well over two years after he was arraigned). And, as the trial court correctly noted, this was only three working days before the March 13, 2017 trial date, which had been scheduled since November 11, 2016. The fact that the court mentioned the number of working days remaining before trial was not a reference to Crim.R. 12(D); it was simply an indication that there was no appropriate basis for excusing untimeliness (even if such had been asserted, which it was not). As a result, Ojezua's argument about a mistake of law or structural error is wholly frivolous.

{¶ 45} In his brief, Ojezua also contends that his retained counsel made a motion in open court for retesting and reweighing of drugs, and that the trial court stated that it would only grant the motion if Ojezua signed a time waiver. Ojezua further states in his brief that he signed a time waiver, which was filed on October 14, 2016, and that on November 17, 2016, the trial court granted his motion to retest and reweigh the drugs. According to Ojezua, his trial counsel then improperly withdrew the motion for retesting on November 22, 2016, without his knowledge.

{¶ 46} "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. In Ohio, that right is implemented by the statutory scheme imposing specific time limits in R.C. 2945.71 et seq. * * * The particular rights that that statutory scheme confers attach when a defendant is arrested on criminal charges. They continue so long as those charges remain pending, until his criminal liability is determined by trial or a plea of guilty or no contest." *State v. Kerby*, 162 Ohio App.3d 353, 2005-Ohio-3734, 833 N.E.2d 757, ¶ 17 (2d Dist.), citing *State v. Pachay*, 64 Ohio St.2d 218, 221, 416 N.E.2d 589 (1980).

{¶ 47} Under R.C. 2945.71(C)(2), persons against whom felony charges are pending must "be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(E) further provides that "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."

{¶ 48} Ojezua was arrested on July 8, 2014, but he was not indicted until October 6, 2014. Furthermore, he was not arrested and held on the charge until December 5, 2014. The time for speedy trial purposes, therefore, began to run December 6, 2014. *See State v. Azbell*, 112 Ohio St.3d 300, 2006-Ohio-6552, 859 N.E.2d 532, ¶ 21 ("for purposes of calculating speedy-trial time pursuant to R.C. 2945.71(C), a charge is not pending until the accused has been formally charged by a criminal complaint or indictment, is held pending the filing of charges, or is released on bail or recognizance"); *State v. Dunckleman*, 2d Dist. Montgomery No. 19233, 2002-Ohio-4463, ¶ 19, citing *State v. Stamps*, 127 Ohio App.3d 219, 223, 712 N.E.2d 762 (1st Dist.1998) (for purposes of speedy trial calculation, time starts the day after a defendant is arrested).

{¶ 49} Ojezua was incarcerated until March 26, 2015, when he was released on

bond. However, none of this time was subject to triple-counting, because Ojezua was also arrested on December 5, 2014, due to a notice of violation of community control sanctions and his failure to appear at the revocation hearing. Thus, Ojezua was not in jail merely because of the pending charge. *See State v. MacDonald*, 48 Ohio St.2d 66, 357 N.E.2d 40 (1976), paragraph one of the syllabus ("R.C. 2945.71(D) is applicable only to those defendants held in jail in lieu of bail solely on the pending charge"); *State v. Martin*, 56 Ohio St.2d 207, 211, 383 N.E.2d 585 (1978) (triple count provision does not apply where defendant was being held in jail both on criminal charge and probation violation); *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 7. *Accord State v. DeLeon*, 2d Dist. Montgomery No. 18114, 2002 WL 1393665, *3 (June 28, 2002).

**{¶ 50}** Specifically, on July 11, 2014, a notice of community control sanctions and order was filed in *State v. Ojezua*, Montgomery County Common Pleas Case No. 12 CR 3251. This order set bond for Ojezua at $5,000, and he was released on bond filed in that case on July 16, 2014. He failed to appear for his revocation hearing, and a $50,000 bail amount was ordered in that case on December 5, 2014. Ojezua remained in jail pending resolution of the revocation issue until March 26, 2015, when he posted bond and was released from jail. Again, due to this, the time would not have been triple-counted.

**{¶ 51}** On December 26, 2014, the trial court set a March 30, 2015 trial date in the case before us. This date was within the 270 day speedy trial limit. However, during this period, Ojezua filed motions that tolled the speedy trial time, including three motions for bond review, which tolled the time for 22 days. He also filed a motion to suppress

evidence on March 23, 2015. At that point, due to the prior tolling, 86 days had elapsed.[3] The speedy trial clock was then tolled from March 23, 2015, until the trial court granted the motion on July 27, 2015. *State v. McClain*, 2015-Ohio-3690, 41 N.E.3d 871, ¶ 23 (2d Dist.).

**{¶ 52}** Before the court ruled on the motion to suppress, the defense asked for a continuance on July 23, 2015, and the court granted a continuance until August 6, 2015. This time was not chargeable to the State. *See* R.C. 2945.72(H). On August 3, 2015, the State filed a notice of appeal from the trial court's suppression decision, and tolling occurred also during this period of time, pursuant to R.C. 2945.72(I), which allows tolling during periods in which the State has filed an appeal under R.C. 2945.67 and the appeal is pending.

**{¶ 53}** Our decision reversing the trial court's suppression decision was filed on April 22, 2016. *Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14, at ¶ 41. However, additional tolling applied until all appeals had been exhausted. *See State v. Clark*, 2d Dist. Montgomery No. 19016, 2002 WL 1250808, *3 (June 7, 2002) ("when an accused files a motion, the speedy trial time is stayed until the expiration of all appeals on the motion"). The Supreme Court of Ohio declined to accept Ojezua's appeal on September 14, 2016. *Ojezua*, 146 Ohio St.3d 1504, 2016-Ohio-5792, 58 N.E.3d 1175. However, we also noted in *Clark* that an additional ten days is added to the exhaustion time, because the Supreme Court Rules of Practice allow an additional ten days for filing motions for reconsideration. *Clark* at *3, citing S.Ct. Prac.R. IX, Section 1 [now 18.02(A)]. *See also*

---

[3] From December 6, 2014 to March 23, 2015, 108 days had elapsed (March 23 was the 108th day). 108 minus 22 equals 86.

*City of Akron v. Downey*, 24 Ohio App.3d 225, 495 N.E.2d 28 (9th Dist.1984).

{¶ 54} Thus, the speedy trial clock began again on September 25, 2016 (the day after all appeals and appeal time were exhausted). At that point, 184 days remained for speedy trial purposes.[4] By that time, Ojezua had already been conveyed to prison based on revocation of his community control. Specifically, the trial court sentenced Ojezua to 15 months in prison on November 9, 2015, and ordered him to turn himself in by November 23, 2015, as he was currently out of jail on bond. Ojezua failed to appear and the court issued a warrant for his arrest. He was subsequently arrested on March 29, 2016, and was transported to prison on April 5, 2016. Again, the triple-count provisions in R.C. 2945.71(E) would not apply because Ojezua was imprisoned on an independent charge.

{¶ 55} On October 14, 2014, a waiver of time requirements was filed, indicating that Ojezua had waived his speedy trial rights. At that point, an additional 20 days had elapsed, so 164 days remained before Ojezua had to be brought to trial. In view of these facts, Ojezua's contention that he was coerced into signing a waiver in order to be able to file a motion for to reweigh the drugs makes no sense. A significant amount of time remained before the speedy trial time expired.

{¶ 56} Subsequently, on October 17, 2016, Ojezua filed a motion to retest and reweigh the cocaine. This motion was based on Ojezua's contention that the State had the burden of proving "that the weight of the cocaine meets the statutory threshold excluding the weight of any filler materials used in the mixture." Doc. #18, p. 2. In

---

[4] When the motion to suppress was filed, 86 days had elapsed. 270 minus 86 equals 184.

support of this request, Ojezua relied on *State v. Sanchez*, 2016-Ohio-542, 59 N.E.3d 719 (6th Dist.), which had been accepted for review by the Supreme Court of Ohio. In *Sanchez*, the court of appeals found error because the defendant had been convicted of "higher level felonies based on the gross weight, instead of the actual weight, of the cocaine." *Id.* at ¶ 14. In this regard, the Sixth District Court of Appeals relied on its prior decision in *State v. Gonzales*, 6th Dist. Wood No. WD-13-086, 2015-Ohio-461, which had been accepted for review by the Supreme Court of Ohio. *Id.* Thus, both these decisions were on review before the Supreme Court of Ohio when Ojezua asked for the cocaine to be reweighed.

{¶ 57} Contrary to Ojezua's contention, the trial court never granted this motion to retest and reweigh. Instead, the court filed an order on October 21, 2016, allowing the State to file a memorandum in response to the motion on or before November 1, 2016. The court then gave Ojezua until November 8, 2016, to reply to the State's memorandum. There is no merit to Ojezua's claim that the trial court granted his motion.

{¶ 58} Neither side filed any further memoranda. Ojezua was transported to court on November 17, 2016, and the trial court then filed an order on November 18, 2016, setting a trial date for March 13, 2017. On November 22, 2016, and prior to any decision by the Supreme Court of Ohio in *Gonzales I or II*, Ojezua withdrew his motion to retest and reweigh without prejudice. Nothing in the motion indicates the reason for withdrawing the motion. As noted, Ojezua contends this was improper because it was done without his consent.

{¶ 59} Based on the above discussion, anything that may have occurred regarding Ojezua's contention that trial counsel improperly withdrew his motion for retesting is

outside the record. We have said many times that, on direct appeal, we cannot review matters that are outside the record. *See, e.g., State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 48 (2d Dist.); *State v. Owens*, 2d Dist. Montgomery No. 17394, 2000 WL 217219, *6 (Feb. 25, 2000). Instead, such matters must be presented in a petition for post-conviction relief. *State v. Johnson*, 2d Dist. Montgomery No. 21332, 2006-Ohio-4934, ¶ 21. Accordingly, because we could not consider this matter on direct appeal, no responsible contention could be made that the issue presents a basis for reversal. *Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, at ¶ 8.

**{¶ 60}** As a final matter, Ojezua contends during this discussion that he was deprived of due process because the State tested the drugs without notifying him or giving him a chance to ask the court to appoint a qualified analyst. As was noted previously, the State is not required to notify defendants of testing under R.C. 2925.51(F). The only thing the State must do in this context is to preserve a portion of the drugs "for the benefit of independent analysis performed by a laboratory analyst employed by the accused person, or, if the accused is indigent, by a qualified laboratory analyst appointed by the court." R.C. 2925.51(E). The portion must be a representative sample of sufficient size to allow an analyst to make a scientific analysis about identity. *Id.* Again, this is not the issue here.

### B. Alleged Speedy Trial Violation

**{¶ 61}** Ojezua's second proposed assignment of error states that:

> When There Is a Pure Question of Law[,] the Trial Court Abused Its
> Discretion in Overruling the Appellant's Motion for Speedy Trial Without a

Hearing, Denying Appellant's Constitutional Rights of Due Process in Violation of the Ohio and U.S. Constitution.

{¶ 62} In connection with this proposed assignment of error, Ojezua contends that he was deprived of a constitutional right because the trial failed to decide his motion for a speedy trial violation. According to Ojezua, the ruling was vital to his decision whether to proceed to trial, and the court's failure to rule required him to speculate.

{¶ 63} As was noted, on October 14, 2016, Ojezua filed a speedy trial waiver. He then withdrew his waiver on February 22, 2017, and demanded an immediate trial. The Supreme Court of Ohio has held that "following an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time." *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987). In withdrawing the wavier, Ojezua did not object to further continuances, but he did ask for a speedy, immediate trial. At the time of the withdrawal, trial was set for March 13, 2017, which would certainly have been within a reasonable time, as it was shortly after withdrawal of the waiver.

{¶ 64} However, on March 10, 2017, or about three weeks after the withdrawal of the waiver, Ojezua pled no contest to the charge as indicted. On the same day Ojezua pled no contest, he also filed a motion to dismiss, based on an alleged speedy trial violation. The trial court did not rule on the motion, presumably because Ojezua entered a plea the same day, and the State would not have had an opportunity to respond. Furthermore, the motion was literally a one-paragraph boilerplate motion that contained

no substantive discussion.   *See* Doc. #45, Motion to Dismiss for Lack of Speedy Trial.

**{¶ 65}** Notably, after counsel was appointed due to Ojezua's indigence, Ojezua filed a motion on April 12, 2017, seeking to withdraw his plea.   The asserted reason for withdrawing the plea was that the plea did not conform with Crim.R. 11(C)(2).   Ojezua did not then, or thereafter, assert any claims relating to a violation of speedy trial rights.

**{¶ 66}** In its decision granting the motion to withdraw the plea, the court noted that it had held an evidentiary hearing on May 12, 2017.   The decision clearly indicates that the basis for allowing withdrawal was Ojezua's testimony that his former counsel "had in fact indicated to him that he would receive his jail time credit against his sentence."   Doc. #83, Decision and Order Granting Defendant's Motion to Withdraw Plea at p. 1.   In addition, the court observed that the jail time credit analysis was "somewhat convoluted in that the Defendant was sentenced on a revocation case arising out of the same facts as the herein case."   *Id.*   The court, therefore, concluded that withdrawal of the plea should be allowed because Ojezua did not understand the possible penalties he faced. *Id.* at p. 2.

**{¶ 67}** Nothing was mentioned thereafter concerning any alleged speedy trial violation.   The court's decision allowing the plea withdrawal was filed on July 5, 2017, and trial was set for August 28, 2017.   Subsequently, Ojezua again pled no contest to the charges on August 23, 2017.   Ojezua did not mention speedy trial rights during the plea agreement, and at that time, the court verified that the dispute leading to withdrawal of the plea concerned jail credit for the time Ojezua spent in prison due to the revocation. Transcript of Plea Hearing, p. 10.   Ojezua also verified that he and his attorney had discussed and explored "any defense or any legal motions that could be filed."   *Id.* at pp.

11-12.

**{¶ 68}** Finally, almost two months elapsed between the plea and the sentencing hearing. During that time, Ojezua failed to raise any speedy trial violation, nor did he mention the point at sentencing. In view of the above facts, no responsible contention could be made that issues pertaining to speedy trial or the court's failure to rule on the speedy trial motion present a basis for reversal. *Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, at ¶ 8.

### C. Failure to Reduce Charge

**{¶ 69}** Ojezua's third proposed assignment of error states that:

When There is a Pure Question of Law[,] the Trial Court Abused Its Discretion in Overruling the Appellant's Motion to Reduce Indicted Charges; Withdrawal of All Previously Filed Speedy Trial Waiver; and Demand for Speedy Trial Without a Hearing, Denying Appellant's Constitutional Rights of Due Process in Violation of the Ohio and U.S. Constitution.

**{¶ 70}** In connection with this proposed assignment of error, Ojezua makes the same arguments about speedy trial that we have already rejected, and we will not further consider those points. Ojezua makes one additional point, and that relates to his contention that, when his motion to reduce the charge was filed, he had a "statutory right" to have his charge reduced to a fifth-degree felony based on *Gonzales I*, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405.

**{¶ 71}** As was noted, Ojezua filed a motion on January 17, 2017, seeking a reduction of his charge to a fifth-degree felony. This motion was based on *Gonzales I*,

which was issued on December 23, 2016. In *Gonzales I*, the court considered a certified conflict between the Sixth District Court of Appeals and our judgment in *State v. Smith*, 2d Dist. Greene No. 2010-CA-36, 2011-Ohio-2568. *Gonzales I* at ¶ 7. The court accepted the view of the Sixth District and held that, "in prosecuting cocaine-possession offenses under R.C. 2925.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold." *Id.* at ¶ 22.

{¶ 72} On January 23, 2017, the trial court gave the State until January 30, 2017, to respond to Ojezua's motion to reduce the charge. In its response, the State argued that the precise amount of cocaine within the drugs seized had not been calculated, and that *Gonzales I* did not call for blanket dismissal or reduction of all cocaine charges. As was noted earlier, the trial court held an evidentiary hearing on the motion to reduce charges on March 2, 2017. At that time, the State apparently made an oral motion to dismiss the indictment without prejudice pursuant to Crim.R. 48(A).[5]

{¶ 73} On January 3, 2017, the State of Ohio filed a motion for reconsideration in *Gonzales I*. *See Gonzales II*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, at ¶ 20. On March 6, 2017, the Supreme Court of Ohio granted the State's motion and vacated its prior decision. *Id.* at ¶ 2. This time, the court held that "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty

---

[5] No transcript from this hearing is in the record. However, the State indicated in a memorandum filed in the trial court on March 6, 2017, that the court had held an evidentiary hearing on March 2, 2017, and that the State had orally moved to dismiss the indictment at the hearing. *See* Doc. #41, State's Motion to Withdraw State's Oral Motion to Dismiss Without Prejudice, at p. 2.

for cocaine possession under R.C. 2925.11(C)(4)." *Id.* at ¶ 3.

{¶ 74} On the same day, the State filed a motion to withdraw its oral motion to dismiss the charge against Ojezua, based on the intervening decision in *Gonzales II*. Doc. #41 at p. 2. The trial court granted the State's request on March 10, 2017.

{¶ 75} As is evident from the preceding discussion, Ojezua's motion to reduce the charge was based on the initial decision in *Gonzales I*, which would have required the State to separate the amount of cocaine from any filler contained in the drugs that were seized and to charge Ojezua with only the weight of cocaine found in the sample. Clearly, under this decision, Ojezua would have been subject to some reduced drug possession charge (although it is unclear exactly how much cocaine was present), and his counsel correctly filed a motion to have his charge reduced.

{¶ 76} However, before that occurred, the Supreme Court of Ohio reversed its prior decision and held that "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4)." *Gonzales II*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, at ¶ 3.

{¶ 77} Any potential basis for reducing the possession charge no longer existed at that point, and on March 10, 2017, the trial court correctly overruled the motion to reduce the charges. "All trial courts and intermediate courts of appeals are charged with accepting and enforcing the law as promulgated by the Supreme Court and are bound by and must follow the Supreme Court's decisions." *World Diamond, Inc. v. Hyatt Corp.*, 121 Ohio App.3d 297, 306, 699 N.E.2d 980 (10th Dist.1997); *Penn Traffic Co. v. Clark Cty. Bd. of Elections*, 138 Ohio App.3d 1, 5, 740 N.E.2d 290 (2d Dist.1999).

**{¶ 78}** Because the trial court was required to follow the decision of the Supreme Court of Ohio in *Gonzales II*, no responsible contention could be made that the court erred in failing to reduce the charge against Ojezua. *Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, at ¶ 8.

### D. Ineffective Assistance of Counsel

**{¶ 79}** Ojezua's fourth proposed assignment of error states that:

[There Was] Ineffective Assistance of Trial Counsel Denying Appellant's Constitutional Rights of Due Process in Violation of the Ohio and U.S. Constitution.

**{¶ 80}** Under this proposed assignment of error, Ojezua contends that his original, retained trial counsel was ineffective in several ways: (1) by tricking him into waiving his speedy trial rights and withdrawing the motion for retesting and reweighing without Ojezua's consent; (2) by declining a plea bargain without informing Ojezua; and (3) by failing to accept a plea bargain that Ojezua told counsel to accept. According to Ojezua, counsel that was appointed after the finding of indigence was also ineffective because he was hampered by retained counsel's ineffectiveness and was left with no basis for negotiation.

**{¶ 81}** The matters leading to these claims rely on facts that are outside the record and cannot be considered on direct appeal. *Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, at ¶ 48. Accordingly, no responsible contention could be made that trial counsel rendered ineffective assistance. *Marbury,* 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, at ¶ 8.

### E. Ineffective Assistance of Appellate Counsel

**{¶ 82}** Ojezua's fifth proposed assignment of error states that:

[There Was] Ineffective Assistance of Appellate Counsel, for Appellate Counsel Failing [Sic] an Erroneous Anders v. California, 386 U.S. 738 Brief, Denying Appellant's Constitutional Rights of Due Process in Violation of the Ohio and U.S. Constitution.

**{¶ 83}** Under this proposed assignment of error, Ojezua contends that appellate counsel has rendered ineffective assistance in the following ways: (1) by filing a statement of facts that begins with October 6, 2014 (the date of the indictment) rather than with Ojezua's arrest on July 8, 2014; (2) by omitting certain unspecified court appearances from counsel's recitation of the docket; and (3) by omitting various errors and constitutional violations that are alleged in Ojezua's pro se brief.

**{¶ 84}** Contrary to Ojezua's contentions, we find no ineffective assistance on the part of appellate counsel. We have independently reviewed the record and find no prejudicial errors "upon which a non-frivolous assignment of error could be predicated." *State v. Shelton*, 2d Dist. Montgomery No. 22202, 2008-Ohio-4016, ¶ 7.

### V. Conclusion

**{¶ 85}** Based on our responsibilities under *Anders*, we have independently reviewed the entire record in this case, and we agree with the appointed counsel's assessment that there are no arguably meritorious issues for appellate review and that this appeal is frivolous. Accordingly, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., dissenting:

{¶ 86} As a preliminary matter, the record does not include a transcript of the March 2, 2017 evidentiary hearing on Ojezua's motion to reduce the charge. We have frequently stated that the record in an *Anders* case must contain transcripts of all on-the-record proceedings in the trial court. *See State v. Mayberry*, 2d Dist. Montgomery No. 26025, 2018-Ohio-2220, ¶ 4. When the record is incomplete, the filing of an *Anders* brief is not appropriate. *Id.*

{¶ 87} The March 2, 2017 evidentiary hearing related to a motion based on *Gonzales I*, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405. In light of the supreme court's reversal of its position in *Gonzales I*, *Gonzales II*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, the issues addressed in the March 2 hearing may be moot. Nevertheless, appellate counsel should have reviewed transcripts of all on-the-record proceedings prior to filing an *Anders* brief.

{¶ 88} Of primary concern, I would find that there is a non-frivolous issue related to Ojezua's motion to reweigh the drugs. After drugs were found on his person, Ojezua was arrested and released on July 8, 2014. A laboratory weighed the drugs on July 25, 2014. Ojezua was not indicted until October 6, 2014. With this chronology, it is not an "unreasonable contention" that he should be entitled to have the drugs reweighed either by his expert or to have his expert present at a reweighing by the State.

{¶ 89} As far as his delay in making this request, a substantial delay in the

resolution of this case resulted from the trial court's granting of Ojezua's motion to suppress and the appeal from that ruling. The case was remanded to the trial court in April 2016, and the court granted several continuances of the scheduling conference. On October 17, 2016, Ojezua filed a motion to retest and reweigh the alleged cocaine. On November 17, 2016, the scheduling conference was held, at which time the trial was set for March 13, 2017. Before that trial date occurred, Ojezua withdrew his motion to retest and reweigh the drugs (November 22, 2016), and he entered a no contest plea to the charge (March 10, 2017). In April 2017, Ojezua sought to withdraw that plea, and prior to the trial court's ruling on that motion, he asked the court to appoint an expert to independently reweigh the drugs. On July 5, 2017, the trial court granted the motion to withdraw the plea, and it set the trial for August 28, 2017. The trial court denied Ojezua's motion for an expert on July 26, 2017, and he again pled no contest on August 23, 2017.

**{¶ 90}** Ojezua had several different attorneys, at least one of which withdrew a timely-filed motion for reweighing. In addition, Ojezua's motion for an expert to reweigh the drugs was pending when the trial court granted his motion to withdraw his first plea and set a trial date. In short, I would find that a non-frivolous claim exists that the trial court erred in denying Ojezua's motion to reweigh the drugs.

. . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Adam J. Arnold
Victor Ojezua
Hon. Richard Skelton